## STATE OF CONNECTICUT *v.* JORGE SANCHEZ
## (AC 17336)

O'Connell, C. J., and Landau and Schaller, Js.

Argued February 24—officially released August 25, 1998

*Elizabeth M. Inkster*, assistant public defender, for the appellant (defendant).

*Susann E. Gill*, senior assistant state's attorney, with whom, on the brief, were *Jonathan C. Benedict*, state's attorney, and *Linda N. Howe*, assistant state's attorney, for the appellee (state).

LANDAU, J. The defendant, Jorge Sanchez, appeals from the judgment of conviction, rendered after a jury trial, of murder in violation of General Statutes § 53a-54a (a),[1] conspiracy to commit murder in violation of General Statutes §§ 53a-48[2] and 53a-54a, and larceny in the first degree in violation of General Statutes § 53a-122 (a) (3).[3] On appeal, the defendant claims that the trial court improperly (1) denied his motions for acquittal on the basis of insufficient evidence to prove his guilt beyond a reasonable doubt and (2) refused to give an accomplice and a special credibility instruction concerning the testimony of the state's informant. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. The defendant had been a member of the Latin Kings gang from approximately 1989 until 1993 when he was expelled for breaking gang rules. He sought help from his cousin, Antonio Rigual, in getting back in the

---

[1] General Statutes § 53a-54a (a) provides: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[2] General Statutes § 53a-48 (a) provides: "A person is guilty of conspiracy when, with intent that conduct constituting a crime be performed, he agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them commits an overt act in pursuance of such conspiracy."

[3] General Statutes § 53a-122 (a) provides in relevant part: "A person is guilty of larceny in the first degree when he commits larceny as defined in § 53a-119 and . . . (3) the property consists of a motor vehicle, the value of which exceeds ten thousand dollars . . . ."

gang. Rigual asked his roommate, Edwardo Ortiz, what the defendant could do to regain his membership in the gang. Ortiz asked Emanuel Roman and Richard Morales, the local gang leaders, for their advice. Roman and Morales informed Ortiz that the only way the defendant could regain his membership was to kill either Louis Rodriguez, who had had an affair with Roman's wife, or the victim, Angel Soto, who knew of the affair but failed to report it. Ortiz did not relay this information to the defendant until the defendant asked Ortiz how he could regain his membership. Because the defendant did not know the victim, Ortiz pointed him out.

With the help of others, the defendant stole a red van from Devoe Paints and painted it with brown primer. On the evening of April 8, 1994, the defendant, Jesus Valentin and an individual known as "Black" drove through Bridgeport in the van looking for the victim. They saw the victim leave the Savoy Club and followed his vehicle until it stopped outside a restaurant. When the van stopped next to the victim's vehicle, the defendant and Black shot him repeatedly and fatally.

After the shooting, the defendant, Valentin and Black attended Rigual's birthday party, which was given by Ortiz. The defendant told Ortiz and Rigual that he had just killed the victim. Rigual put his necklace of colored beads on the defendant, a sign of gang membership. The day after the murder, Ortiz and the defendant's brother purchased flares, intending to burn the van, which was recovered before it was burned.

During their investigation, the police obtained statements from Ortiz, Valentin and Albert Aponte, each of whom recounted substantially the same facts about the victim's death. At trial, however, Valentin and Aponte recanted their statements.[4] Aponte claimed that his

---

[4] Aponte's and Valentin's statements were admitted in evidence pursuant to the *Whelan* doctrine because the statements contained substantial evidence as to the witnesses' personal knowledge of the victim's murder. See

statement was a fabrication that Ortiz had told him to give. At the close of the state's evidence and again at the end of all the evidence, the defendant moved for a judgment of acquittal as to all charges. The trial court denied both motions. Additional facts will be noted as necessary.

I

The defendant's first claim is that there was insufficient evidence to prove him guilty beyond a reasonable doubt. More specifically, the defendant claims that because the state's informant, Ortiz, was impeached on numerous grounds, there was no evidence by which the jury reasonably could have concluded that the defendant was guilty beyond a reasonable doubt.[5] We are not persuaded.

---

*State* v. *Whelan*, 200 Conn. 743, 753, 513 A.2d 86, cert. denied, 479 U.S. 994, 107 S. Ct. 597, 93 L. Ed. 2d 598 (1986).

[5] The defendant subsumes in this claim that Ortiz' testimony was inherently incredible and substantially uncorroborated, and was, therefore, insufficient to establish the defendant as the victim's murderer. This claim presents a question of law. In support of his claim, the defendant cites *State* v. *Sivri*, 231 Conn. 115, 165, 646 A.2d 169 (1994) (*Peters, C. J.*, dissenting); *State* v. *Skipper*, 228 Conn. 610, 621–22, 637 A.2d 1101 (1994); *State* v. *Hammond*, 221 Conn. 264, 287–88, 604 A.2d 793 (1992); and *State* v. *Estrada*, 28 Conn. App. 416, 422, 612 A.2d 110, cert. denied, 223 Conn. 925, 614 A.2d 828 (1992). Each of the cases cited stands for the rule that a "trier's finding of fact are not conclusive where the state's evidence is improbable and unconvincing and where all the facts found are insufficient to prove the guilt of the defendant beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Sivri*, supra, 163 (*Peters, C.J.*, dissenting).

Although we recognize this rule of law when appropriate, it is inapplicable in this case because the facts here are distinguishable from the cases cited by the defendant. In each of those cases, the state presented no evidence regarding a particular element of the crime with which the defendant was charged. To reach a guilty verdict, the jury had to draw inferences by speculating about the missing evidence. That is not the situation in the case before us, where there was controverted evidence as to the elements of the crimes charged. In such instances, the role of the jury is to determine the credibility of the witnesses. "Whether there seems to be contradiction . . . in the testimony, it is precisely this type of factual conflict that Anglo-American jurisprudence has traditionally entrusted to the jury." *State* v. *Gaynor*, 182 Conn. 501, 504, 438 A.2d 749 (1980).

The standards by which we review claims of insufficient evidence are well established. "When reviewing a sufficiency of the evidence claim, our courts apply a two-prong test. First, we construe the evidence in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Perry*, 48 Conn. App. 193, 196, 709 A.2d 564, cert. denied, 244 Conn. 931, 711 A.2d 729 (1998).

"It is within the province of the jury to draw reasonable and logical inferences from the facts proven. . . . The jury may draw reasonable inferences based on other inferences drawn from the evidence presented. . . . Our review is a fact based inquiry limited to determining whether the inferences drawn by the jury are so unreasonable as to be unjustifiable. . . . We note that the probative force of the evidence is not diminished because it consists, in whole or in part, of circumstantial evidence rather than direct evidence. . . . It has been repeatedly stated that there is no legal distinction between direct and circumstantial evidence so far as probative force is concerned. . . . It is not one fact, but the cumulative impact of a multitude of facts which establishes guilt in a case involving substantial circumstantial evidence. . . . [T]he inquiry into whether the record evidence would support a finding of guilt beyond a reasonable doubt does not require a court to ask itself whether *it* believes that the evidence . . . established guilt beyond a reasonable doubt. . . . Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. . . . In doing so, we keep in mind that [w]e have

not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility." (Emphasis in original; citations omitted; internal quotation marks omitted.) *State* v. *Radzvilowicz*, 47 Conn. App. 1, 17–18, 703 A.2d 767, cert. denied, 243 Conn. 955, 704 A.2d 806 (1997).

"Moreover, [i]n evaluating evidence that could yield contrary inferences, the [jury] is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . As we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the [jury], would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty. . . . Furthermore, [t]his court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Citations omitted; internal quotation marks omitted.) *State* v. *Torres*, 242 Conn. 485, 490–91, 698 A.2d 898 (1997).

"It is also the absolute right and responsibility of the jury to weigh conflicting evidence and to determine the credibility of the witnesses. . . . Thus, the issue of the identification of the defendant as the perpetrator of the crime is peculiarly an issue of fact to be resolved by the jury. . . .

"The test for determining whether the evidence is sufficient to sustain a verdict is thus whether the [trier of fact] could have reasonably concluded, upon the facts established and the reasonable inferences drawn therefrom, that the cumulative effect of the evidence

was sufficient to justify the verdict of guilty beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Smith*, 46 Conn. App. 600, 608, 700 A.2d 91, cert. denied, 243 Conn. 935, 702 A.2d 642 (1997).

The defendant claims there was insufficient evidence because Ortiz, the state's informant, was its primary witness. Ortiz was biased because he had avoided federal prosecution by agreeing to provide both state and federal authorities with information about the criminal activities of the gang, and Aponte and Valentin recanted the sworn statements they had given to police.

Our review of the transcript reveals that Ortiz, at the time of his testimony, was incarcerated in a federal detention facility in Rhode Island. From his association with the gang, Ortiz knew that the defendant used an Uzi and Black used a .38 caliber firearm to kill the victim. The shell casings and bullets found at the scene or removed from the victim were from those types of weapons. At a time subsequent to the murder, Ortiz spoke to the defendant, Black and Valentin about the murder because there was a rumor on the streets that Ortiz had killed the victim. Ortiz thought one of them had talked about the murder.

While he was being held in Bridgeport on April 10, 1995, Aponte spoke with members of the Bridgeport police department about the victim's murder. He also spoke to the Bridgeport police on May 30, 1995, and gave them a tape-recorded statement, which was transcribed and signed under penalty of perjury. That statement was consistent with Ortiz' version of the murder. In addition, Aponte saw the defendant and another person painting the van used in the shooting, and he saw the Uzi used by the defendant prior to the murder. He was privy to a conversation in which Roman told the defendant to kill the victim or be killed himself, and he was present when the defendant was accepted back into

the gang. He also identified a photograph of the defendant. He did not tell the police that his statement was given according to Ortiz' direction. While Ortiz was incarcerated in Rhode Island, Aponte visited him and Ortiz gave him his car.

On June 19, 1995, Valentin[6] was arrested by the Bridgeport police and gave the police a signed statement, under oath and witnessed by his mother. He also identified a photograph of the defendant. Valentin's statement was also consistent with Ortiz' testimony. In addition, the defendant drove the van to Valentin's home on April 8, 1994, and asked him to drive. Valentin was in the van when the defendant and Black shot the victim. At the time the defendant picked him up, Valentin had no knowledge of the plan to shoot the victim and was surprised when it occurred.

On appeal, the defendant, in effect, asks this court to sort through the evidence, discarding that which tends to support his guilt. This we will not do. There was ample evidence in the record to support the jury's conclusion that the defendant was guilty of the crimes of murder, conspiracy to commit murder and larceny. In reaching this conclusion, we need determine only whether a reasonable view of the evidence supports the jury's verdict. See *State* v. *Torres*, supra, 242 Conn. 490. The crux of the defendant's argument is that Aponte and Valentin were more believable than Ortiz. "We do not sit as a thirteenth juror who may cast a vote against the verdict based upon our feeling that some doubt of guilt is shown by the cold printed record. We have not had the jury's opportunity to observe the conduct, demeanor, and attitude of the witnesses and to gauge their credibility." *State* v. *Stepney*, 191 Conn. 233, 255,

---

[6] Valentin was an uncharged material witness. Charges against him for the death of the victim were discharged two weeks prior to his giving testimony in this case.

464 A.2d 758 (1983), cert. denied, 465 U.S. 1084, 104 S. Ct. 1455, 79 L. Ed. 2d 772 (1984). The weight of evidence and the credibility of witnesses was for the jury to determine, and we, therefore, we will not disturb the jury's verdict.

## II

The defendant's second claim is that the trial court improperly refused to give an accomplice and a special credibility instruction concerning the testimony of the state's informant, Ortiz. The defendant, therefore, claims that the trial court deprived him of his constitutional right to a properly instructed jury or, in the alternative, committed plain error. We disagree.

"In reviewing a constitutional challenge to the trial court's instructions, we must consider the jury charge as a whole to determine whether it is reasonably possible that the instruction misled the jury. . . . The test is whether the charge as a whole presents the case to the jury so that no injustice will result. . . . We will reverse a conviction only if, in the context of the whole, there is a reasonable possibility that the jury was misled in reaching its verdict. . . .

"A jury instruction is constitutionally adequate if it provides the jurors with a clear understanding of the elements of the crime charged, and affords them proper guidance for their determination of whether those elements were present. . . . An instruction that fails to satisfy these requirements would violate the defendant's right to due process of law as guaranteed by the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution. . . .

"The test of a charge is whether it is correct in law, adapted to the issues and sufficient for the guidance of the jury . . . . The primary purpose of the charge

is to assist the jury in applying the law correctly to the facts which they might find to be established. . . . The purpose of a charge is to call the attention of the members of the jury, unfamiliar with legal distinctions, to whatever is necessary and proper to guide them to a right decision in a particular case." (Citations omitted; internal quotation marks omitted.) *State* v. *Lemoine*, 233 Conn. 502, 509–10, 659 A.2d 1194 (1995). "It is the law of this state that a request to charge which is relevant to the issues of [a] case and which is an accurate statement of the law must be given. . . . It is, however, also the law of this state that a refusal to charge in the exact words of a request will not constitute error if the requested charge is given in substance." (Internal quotation marks omitted.) *State* v. *Cooper*, 182 Conn. 207, 211, 438 A.2d 418 (1980).

The following additional facts are necessary for our consideration of the defendant's claim. Ortiz was arrested by members of the Federal Bureau of Investigation in New Jersey on June 29, 1994. He told authorities he wanted to talk to them about events that had taken place in Bridgeport. On that date, Ortiz talked about a number of criminal events in Bridgeport, but he did not talk about the death of the victim, except to say that he was not involved in the murder. Ortiz did not talk to authorities about the victim's murder until November, 1994. He did not answer questions from law enforcement authorities during the summer of 1994 because he was not represented by counsel at that time. Ortiz was involved in armed robberies in Bridgeport, and he had lied to federal authorities about the extent of his involvement with drug activities. He entered into a written agreement to cooperate with federal, state and local law enforcement authorities, and to testify about criminal activities of which he was aware.

Ortiz pleaded guilty to one federal charge of conspiracy to possess and distribute narcotics in exchange for

his testifying against the defendant in this case, as well as other unrelated prosecutions. At the time of trial, Ortiz had not yet been sentenced on this charge. He knew the range of sentence for that charge was from ten years to life, that there were federal guidelines that determined the length of his sentence and that the amount of cooperation he gave on a number of cases would have a direct influence on his sentence. He hoped to benefit by testifying against the defendant in this case. Ortiz claimed that he had to tell the truth to gain any benefit from the agreement he made with federal authorities.

The defendant's request to charge included an instruction that the jury had a duty to view Ortiz' testimony with special caution because he was an accomplice to the murder.[7] The defendant argued that because Ortiz had told the defendant how he could regain his

---

[7] The defendant requested the trial court to instruct the jury as follows: "The motive a person has in telling his story is always to be considered by you in weighing whether or not his story is true. You may consider the fact that Mr. Ortiz is benefiting himself through presenting his testimony in such a manner. In weighing the testimony of an accomplice who is a self-confessed criminal, you should consider that fact. It may be that you would not believe a person who has committed a crime as readily as you would believe a person of good character. In weighing the testimony of an accomplice who has not yet been sentenced or whose case has not yet been disposed of or who has not been charged with offenses in which the state has evidence, you should keep in mind that he may in his own mind be looking for some favorable treatment in the sentence or disposition of his own case or hoping not to be arrested. Therefore, he may have such an interest in the outcome of this case that his testimony may have been colored by that fact. Therefore, you must look with particular care at the testimony of an accomplice and scrutinize it very carefully before you accept it. There are many offenses that are of such a character that the only persons capable of giving useful testimony are those who are themselves implicated in the crime. It is for you to decide what credibility you will give to a witness who has admitted his involvement and criminal wrongdoing, whether you will believe or disbelieve the testimony of a person who by his own admission has committed or contributed to the crime charged by the state here. Like all other questions of credibility, this is a question you must decide based on all the evidence presented to you."

gang membership, i.e., by killing the victim or Rodriguez, and because Ortiz had joined the defendant's brother in buying flares to burn the van, he qualified as an accomplice and an informant.

The trial court disagreed that Ortiz was an accomplice, explaining that Ortiz was not a "self-confessed" criminal with respect to the charges at issue in this trial. "To be entitled to an instruction regarding a specific witness' possible motive, the defendant must show that the witness is a complaining witness who could himself be subject to prosecution depending on the veracity of his testimony, and that there was evidence to support the assertion that the witness was the culpable party." *State* v. *Sinchak*, 47 Conn. App. 134, 143, 703 A.2d 790 (1997), cert. granted on other grounds, 243 Conn. 964, 707 A.2d 1266 (1998). Initially, we note that Ortiz was not a complaining witness.

In refusing to give the defendant's requested charge, the trial court stated that Ortiz did not confess to murdering the victim or to the related charges. Ortiz confessed to only one federal charge of conspiracy to possess and distribute narcotics. With respect to the murder, the trial court said that Ortiz was a messenger for Rigual, Roman and Morales. After he learned what the defendant could do to regain his membership, Ortiz did not go directly to the defendant with the information. He waited until the defendant approached him. There was no evidence that Ortiz had participated in planning the murder or knew when it was to take place or that he was at the scene. There was no evidence to support the elements of the aiding and abetting statute: "solicits, requests, commands, importunes or intentionally aids another person to engage in conduct . . . ." General Statutes § 53a-8 (a).[8] Evidence demonstrated

---

[8] General Statutes § 53a-8 (a) provides: "A person, acting with the mental state required for commission of an offense, who solicits, requests, commands, importunes or intentionally aids another person to engage in conduct

that Ortiz' participation in the purchase of flares occurred a day after the murder, and the van was recovered unburned.

The defendant then orally requested the trial court to incorporate language from *State* v. *Cooper*, supra, 182 Conn. 207, regarding the "motive or intent of a culpable victim or witness" in its charge. The trial court instructed defense counsel to put the request in writing. The trial court repeated its invitation to the defense to file a supplemental charge at the close of final arguments. Defense counsel did not file a supplemental request to charge.

The trial court's charge on the credibility of witnesses encompasses more than eight pages of transcript,[9] including, but not limited to the following instructions: "You may disbelieve all or part of any witness' testimony. . . . The most obvious factor you are going to use in determining questions of believability is your own common sense, that same common sense you use every day in determining whether something makes sense to you and whether you feel you can put some faith in it. . . . If you should think that a witness has testified falsely or deliberately falsified his testimony, you should consider whether you should rely upon any of his testimony. . . . Did the witness have an interest in the outcome of the case or any bias, prejudice or motive concerning anybody or any matter involved in the case? . . . You should evaluate the testimony of a witness by your own knowledge of human nature and of the motives which influence and control human conduct. . . ." The defendant took an exception to the

which constitutes an offense shall be criminally liable for such conduct and may be prosecuted and punished as if he were the principal offender."

[9] Our review of the transcript reveals that throughout the trial, the court instructed the jury as to the law with respect to prior inconsistent statements, credibility and truth of the matter at issue.

charge because it did not include the requested language regarding accomplice testimony and the "motive of the witness to testify falsely which I sort of combined in my written request."[10] On appeal, the defendant claims that the trial court's failure to give the accomplice-motive of witness instruction deprived the defendant of his constitutional right to due process. We are unpersuaded.

We agree there was no evidence that Ortiz was an accomplice for the reasons cited by the trial court in refusing to give the accomplice charge. There was no reason for the trial court to give a special instruction on the credibility or motive of Ortiz. "A criminal defendant is not entitled to an instruction singling out any witness who testifies for the state regarding that witness' possible motivation for testifying falsely." *State* v. *Sinchak*, supra, 47 Conn. App. 143. "Finally, [i]n reviewing the jury verdict, it is well to remember that [j]urors are not expected to lay aside matters of common knowledge or their own observation and experience of the affairs of life . . . ." (Internal quotation marks omitted.) *State* v. *Torres*, supra, 242 Conn. 491. "It is an abiding principle of jurisprudence that common sense does not take flight when one enters a courtroom." *State* v. *Zayas*, 195 Conn. 611, 620, 490 A.2d 68 (1985). Faced with the evidence before them, the jurors relied on their own observations and experience of the affairs of life to determine the credibility of the witnesses in reaching their verdict.

Here, the jury was clearly aware through Ortiz' testimony that he was cooperating with law enforcement officials at all levels in order to reduce the number of charges against him and the amount of time he would serve on the federal charge of conspiracy to possess

---

[10] We assume, without deciding, that the defendant's claim was properly preserved.

and distribute narcotics. He admitted freely that he had participated in armed robberies and that he was a gang member. The defense placed in evidence a statement that Ortiz had given to authorities that the defense claimed was inconsistent with his testimony. All of that evidence was before the jury. The trial court informed the jurors that it was their role to determine the facts, to determine which witnesses to believe and to consider what motive a witness might have in testifying. The trial court gave a charge on the credibility of witnesses and how the jury was to deliberate on that issue. Therefore, there was no need for the trial court to give a special instruction.

The judgment is affirmed.

In this opinion the other judges concurred.