CLOSE, JENSEN AND MILLER, P.C. *v.* FRANK
LOMANGINO ET AL.
(AC 17201)

Landau, Sullivan and Dupont, Js.

Argued November 2, 1998—officially released January 26, 1999

*Neil F. Murphy, Jr.*, with whom, on the brief, was *P. Jo Anne Burgh*, for the appellants (named defendant et al.).

*Karen K. Clark*, with whom, on the brief, were *Donald W. Doeg* and *Richard M. Dighello*, for the appellee (plaintiff).

*Opinion*

LANDAU, J. The defendants Frank Lomangino and Adrienne Lomangino[1] appeal from the judgment rendered in favor of the plaintiff, Close, Jensen and Miller, P.C. The jury rendered verdicts in favor of the plaintiff on both its complaint and on the defendants' counterclaim. On appeal, the defendants claim that the trial court improperly (1) prohibited them from using the deposition of one of the plaintiff's former employees to impeach the testimony of the plaintiff's project manager, (2) refused to charge the jury in accordance with *Secondino* v. *New Haven Gas Co.*, 147 Conn. 672, 165 A.2d 598 (1960), and (3) failed to set aside the verdicts

[1] L & B Holding Company, a defendant in the trial court by virtue of its having a mortgage interest in the subject real property that was subordinate to the plaintiff's mechanic's lien, is not a party to this appeal. We refer in this opinion to Frank Lomangino and Adrienne Lomangino as the defendants.

on the ground that the law and evidence required the jury to find that the plaintiff was negligent per se. We affirm the judgment of the trial court.

The following facts are relevant to this appeal. In August, 1987, the parties entered into an oral agreement whereby the plaintiff was to provide the engineering services necessary for the defendants to obtain approval to subdivide a parcel of real property they owned in the town of Somers. The Somers planning commission approved a twenty-six lot subdivision in November, 1989. As of that date, the plaintiff had billed the defendants $133,184.20 for services rendered; the defendants paid only $60,230 of that fee.

The plaintiff thereafter commenced suit against the defendants to foreclose a mechanic's lien or, in the alternative, in quantum meruit to collect the fees it alleged were due. The defendants asserted a three count counterclaim against the plaintiff alleging negligence, breach of contract and violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. In sum, the defendants claimed that the plaintiff failed to complete the subdivision plans in a timely and competent manner. The case was tried to a jury, which rendered verdicts in favor of the plaintiff on its complaint and on counts one and two of the defendants' counterclaim.[2] The trial court denied the defendants' motions to set aside the respective verdicts and a motion for remittitur. This appeal followed.

I

The defendants first claim that the trial court improperly refused to permit them to use the deposition of one of the plaintiff's former employees, John McAvoy,

---

[2] The trial court directed a verdict in favor of the plaintiff on the defendants' CUTPA count.

to impeach the credibility of the plaintiff's project manager on cross-examination. We do not agree.

The following additional facts are necessary for our resolution of this issue. McAvoy was graduated from the University of Connecticut with a degree in engineering in May, 1987, and immediately began to work for the plaintiff. At the plaintiff's direction, he worked on the development of the defendants' subdivision plan. The defendants took McAvoy's deposition prior to trial. The plaintiff's president, John Miller, and Douglas Shanley, project manager for the subdivision plan, both attended McAvoy's deposition. Shanley testified at trial on behalf of the plaintiff. On cross-examination, the defendants asked Shanley about the amount of experience McAvoy had preparing subdivision plans. According to the defendants, Shanley's response was inconsistent with McAvoy's deposition. Because Shanley was present at McAvoy's deposition, the defendants wanted to use McAvoy's deposition to impeach Shanley's veracity and ability to recall. The plaintiff objected to such use of the deposition claiming that McAvoy's testimony was mere hearsay. Neither party called McAvoy to testify.

On appeal, the defendants argue that the trial court improperly refused to let them use McAvoy's deposition, claiming that the deposition was not hearsay because it was a statement used to impeach credibility, rather than for the truth of its contents, citing *State* v. *Rochette*, 25 Conn. App. 298, 302–303, 594 A.2d 1006, cert. denied, 220 Conn. 912, 597 A.2d 337 (1991), cert. denied, 502 U.S. 1045, 112 S. Ct. 905, 116 L. Ed. 2d 806 (1992). Although we agree with the rule of law cited by the defendants, we disagree that the rule applies to the facts of this case. Contrary to their assertion, the defendants did offer McAvoy's deposition for the truth of its contents.[3]

---

[3] The following exchange took place during the defendant's cross-examination of Shanley:

"In the context of a civil case, our Supreme Court, in accepting a common law right to cross-examination, stated '[t]he right of cross-examination is not a privilege but [is] an absolute right and if one is deprived of a complete cross-examination he has a right to have the

"Q. I'd like to focus once again, if I may, on Mr. McAvoy. You indicated that prior to this subdivision you believed that he had been working on three other subdivisions, is that so?

"A. Yes, that's correct.

"Q. Do you remember what they were?

"A. Yes, I do.

"Q. And when did you acquire this knowledge, i.e., the three subdivisions that he was working on?

"A. I remember the subdivisions that he was working on that were in the office at the time as well as some of the other subdivisions that I was working on. So, it's generally a memory from that time.

\* \* \*

"Q. Let me ask you this generally though while I'm on it, you attended all depositions that led up [to] this trial, did you not?

"A. No.

\* \* \*

"Q. Were you at Mr. McAvoy's?

"A. Yes.

\* \* \*

"Q. And did he testify in your presence—

"[Plaintiff's Counsel]: Your Honor, I would object. I think anything Mr. McAvoy said at that deposition would be hearsay.

"[Defense Counsel]: If I may continue the question, this whole thing started with his knowledge about what Mr. McAvoy had done and based within his knowledge I suggest that Mr. McAvoy's sworn statement [was] in his presence. And I'm showing the witness the deposition, Your Honor.

"[Plaintiff's Counsel]: And I claim it. The reason for it?

"[Defense Counsel]: I'm not doing it for the truth of the matter therein, just whether or not—within his knowledge bank and just laid the foundation—he was present to hear Mr. McAvoy.

"The Court: Well, he might have been present to hear what Mr. McAvoy has said but he's not going to be able to tell us.

"[Defense Counsel]: I respectfully say that it would be part of his knowledge bank six months ago what Mr. McAvoy said with regard to this very subject as to how many—

"The Court: Well, the best source of that will be Mr. McAvoy himself.

\* \* \*

"[Defense Counsel]: Now, we deliberately framed our question to this witness as to his knowledge, and, therefore, I claim it on the basis if he had knowledge of [what] Mr. McAvoy, who is the actor, immediately his underling

direct testimony stricken.' *Gordon* v. *Indusco Management Corporation*, 164 Conn. 262, 271, 320 A.2d 811 (1973); see also *Connecticut Natural Gas Corporation* v. *Public Utilities Control Authority*, 183 Conn. 128, 140 n.10, 439 A.2d 282 (1981). This right does not, however, permit the defendant to present evidence that is irrelevant or otherwise inadmissible." *Jacobs* v. *Thomas*, 26 Conn. App. 305, 317, 600 A.2d 1378 (1991), cert. denied, 221 Conn. 914, 603 A.2d 404 (1992).

" '[I]n . . . matters pertaining to control over cross-examination, a considerable latitude of discretion is allowed. *Murphy* v. *Murphy*, 74 Conn. 198, 50 A. 394 (1901); *State* v. *McGowan*, 66 Conn. 392, 34 Atl. 99 [1895].' *Finch* v. *Weiner*, 109 Conn. 616, 620, 145 A. 31 (1929)." *Murphy* v. *Wakelee*, 46 Conn. App. 425, 431, 699 A.2d 301, cert. granted on other grounds, 243 Conn. 956, 704 A.2d 805 (1997). "The determination of whether a matter is relevant or collateral, and the scope and extent of cross-examination of a witness, generally rests within the sound discretion of the trial court. *State* v. *Carmon*, 47 Conn. App. 813, 817, 709 A.2d 7, cert.

---

. . . to whom he reported, said. Not necessarily for the truth of the matter contained, therein, but the fact that Mr. Shanley knew because of his presence which was acknowledged and the foundation of what Mr. McAvoy had said in direct response to the very same question. *And it's contradictory in the minimum to the fact that Mr. McAvoy had worked on three or four other subdivisions and the like and on that basis we respectfully claim it and our right to cross-examine him on it.*

\* \* \*

"[Plaintiff's Counsel]: [I]f he's not offering it for the truth of the matter asserted, it's irrelevant. If you're just saying, I'm offering it to show that the two parties have a difference of opinion, what difference does it make? If you're offering if for the truth of the matter asserted and that Mr. McAvoy saying he had no experience, you're saying he did have experience, it denies me the right to cross-examine Mr. McAvoy on that issue and I could throw out maybe the names of the three subdivisions and say, perhaps he'd say, yes, you're right. I'm sorry I was wrong at that point but at this point in time, again, I agree it's hearsay.

"The Court: I'll sustain your objection at this time. You can have an exception." (Emphasis added.)

denied, 244 Conn. 918, 714 A.2d 7 (1998). Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion. . . . *State* v. *Bova*, 240 Conn. 210, 219, 690 A.2d 1370 (1997)." (Internal quotation marks omitted.) *Wright* v. *Hutt*, 50 Conn. App. 439, 455, 718 A.2d 969, cert. denied, 247 Conn. 939, 723 A.2d 320 (1998).

"Hearsay is an out-of-court statement offered to establish the truth of the matters contained therein. *State* v. *Sharpe*, 195 Conn. 651, 661, 491 A.2d 345 (1985); *State* v. *Packard*, 184 Conn. 258, 274, 439 A.2d 983 (1981)." *State* v. *Rochette*, supra, 25 Conn. App. 303. In *Rochette*, the defendant testified that she did not make a telephone call to a particular person on a certain day. During rebuttal, the state offered a telephone message under the business records exception to the hearsay rule to contradict the defendant's testimony. "The telephone message was not offered to establish the truth of the [defendant's statements concerning her] child's medical condition but rather, was offered to contradict the defendant's statement that she had not [made the call] on October 3 and referred to chemotherapy. Testimony that refutes evidence or impeaches a witness' credibility is proper during rebuttal, and the message, therefore, was properly admissible for this purpose. *State* v. *Peary*, 176 Conn. 170, 174–75, 405 A.2d 626 (1978) [cert. denied, 441 U.S. 966, 99 S. Ct. 2417, 60 L. Ed. 2d 1072 (1979)]; *Vazzano* v. *Slater*, 6 Conn. App. 1, 5, 502 A.2d 440 (1986)." *State* v. *Rochette*, supra, 303.

Here, the defendants claim that McAvoy's deposition was not being offered for the truth of the matter. In reality, however, the purpose of the defendants' offering the deposition was to illustrate a discrepancy between Shanley's and McAvoy's testimony. See footnote 3; see also *State* v. *Vinal*, 205 Conn. 507, 512, 534 A.2d 613 (1987). The issues are ones of fact, i.e, how much experience McAvoy had prior to working on the defendants'

subdivision plan, and of credibility, i.e., who is telling the truth or had the better memory. The jury is the arbiter of those issues. See *State* v. *Aponte*, 50 Conn. App. 114, 124, 718 A.2d 36, cert. granted on other grounds, 247 Conn. 926, 719 A.2d 1169 (1998); *State* v. *Sanchez*, 50 Conn. App. 145, 159, 718 A.2d 52, cert. denied, 247 Conn. 922, 722 A.2d 811 (1998). If the defendants wanted to contradict Shanley's testimony, they could have called McAvoy as a witness.[4] The trial court, therefore, properly refused to permit the defendants to use McAvoy's deposition to impeach Shanley on cross-examination by illustrating a contradiction in their testimony, which goes to the truth of the matter.

## II

The defendants' second claim is that the trial court improperly refused to give the jury an instruction that it could draw a negative inference from the plaintiff's failure to call McAvoy as a witness in accordance with *Secondino* v. *New Haven Gas Co.*, supra, 147 Conn. 672. The trial court refused to give the *Secondino* charge, stating that McAvoy's testimony was only cumulative. The essence of the defendants' claim is that because they assumed that McAvoy was the plaintiff's employee who devoted the most time to the project, he was the individual whom the plaintiff would most likely call as a witness.[5] We do not agree.

To analyze the defendants' claim, we look to the allegations of the complaint. Very simply, it is a collection action. The plaintiff was required to allege and prove that it was engaged to provide services for the defendants, that the services were provided, the amount of time it took to provide the services, and the amount

---

[4] There was evidence that McAvoy, although no longer employed by the plaintiff, lived and worked within this state and was otherwise available to testify.

[5] The defendants mistakenly assert that McAvoy was a necessary witness because the plaintiff needed to establish, through his testimony, the intimate details of the work he did on the subdivision plan.

and reasonableness of its fees and other expenses it incurred on behalf of the defendants. The plaintiff called Miller, its president, and Shanley, the project manager for the subdivision plan, to testify during its case-in-chief; it did not call McAvoy, a technician who worked on the subdivision plan. Miller and Shanley testified as to the scope of the plaintiff's agreement with the defendants, the nature and scope of the services performed by the plaintiff, the plaintiff's billing practices, the fees charged the defendants, the reasonableness of the fees, the amount paid by the defendants and the amount of the fees outstanding. No evidence was offered to show that McAvoy was familiar with the plaintiff's billing practices or accounts receivable. To prove its cause of action, no additional witnesses were necessary.

"The failure of a party to produce a witness who is within his power to produce and who would naturally have been produced by him, permits the inference that the evidence of the witness would be unfavorable to the party's cause. . . . [*Secondino* v. *New Haven Gas Co.*, supra, 147 Conn. 675.] To take advantage of this rule permitting an adverse inference, the party claiming the benefit must show that he is entitled to it. . . . *State* v. *Oliver*, 48 Conn. App. 41, 45, 708 A.2d 594, cert. denied, 244 Conn. 930, 711 A.2d 729 (1998). That is, the party claiming the benefit of the ruling must show that the witness is available and that the witness is one whom the party would naturally produce. . . . Id.; *Secondino* v. *New Haven Gas Co.*, [supra, 675]. A witness who would naturally be produced by a party is one who is known to that party and who, by reason of his relationship to that party or to the issues, or both, could reasonably be expected to have peculiar or superior information material to the case which, if favorable, the party would produce. *Secondino* v. *New Haven Gas Co.*, supra, 675.

"Appellate courts will not disturb a trial court's *Secondino* ruling absent a clear abuse of the trial court's discretion. See *State* v. *Grant*, 221 Conn. 93, 106, 602 A.2d 581 (1992). In reviewing claims that the trial court abused its discretion, great weight is attached to the trial court's decision and every reasonable presumption is given in favor of its correctness. *State* v. *Beckenbach*, 198 Conn. 43, 47, 501 A.2d 752 (1985). *State* v. *Barnes*, 47 Conn. App. 590, 594, 706 A.2d 1000 (1998)."(Internal quotation marks omitted.) *In re Lauren R.*, 49 Conn. App. 763, 776–77, 715 A.2d 822 (1998).

Here, the defendants failed to establish that they were entitled to an adverse inference because they failed to demonstrate that McAvoy was a witness whom, by reason of his relationship to the plaintiff or to the issues in the plaintiff's case-in-chief, the plaintiff would naturally be expected to call. There was evidence that McAvoy no longer worked for the plaintiff but that he still lived and worked in Connecticut. The defendants could have subpoenaed McAvoy to testify but did not. " 'The failure of a party to call as a witness a person who is available to both parties and who does not stand in such a relationship to the party in question or to the issues that that party would naturally be expected to produce him if his testimony was favorable affords no basis for an unfavorable inference.' *Secondino* v. *New Haven Gas Co.*, supra, 147 Conn. 676." *In re Lauren R.*, supra, 49 Conn. App. 777. The defendants also failed to establish that McAvoy's testimony would have been anything other than cumulative. We, therefore, conclude that the trial court did not abuse its discretion in refusing to give a *Secondino* charge to the jury.[6]

---

[6] We note that on October 1, 1998, subsequent to the trial of this matter and submission of briefs to this court, Public Acts 1998, No. 98-50, which prohibits the giving of a *Secondino* jury instruction in civil cases, went into effect. Public Act No. 98-50 provides, "No court in the trial of a civil action may instruct the jury that an inference unfavorable to any party's cause may be drawn from the failure of any party to call a witness at such trial.

## III

The defendants' final claim is that the trial court improperly failed to set aside the verdicts because the law and evidence required the jury to find that the plaintiff was negligent per se. The substance of the defendants' claim is that Shanley testified on cross-examination that he was unaware of a July, 1988 amendment to the town's inland wetlands regulations,[7] and his unfamiliarity with the town's regulations caused undue delay and expense as the subdivision plans had to be redrafted.[8] The defendants, therefore, conclude that the plaintiff was negligent per se and should not have prevailed on either its case-in-chief or on the defendants' counterclaim.[9] We are not persuaded.

However, counsel for any party to the action shall be entitled to argue to the trier of fact during closing arguments, except where prohibited by section 52-174 of the general statutes, that the jury should draw an adverse inference from another party's failure to call a witness who has been proven to be available to testify."

[7] The relevant portion of the defendants' cross-examination of Shanley is as follows:

"Q. Are you unaware as you sit here that the town of Somers has specific wetland requirements for distances between the septic system and a wetland, and a house and a wetland?

\* \* \*

"A. Let's be very clear. Didn't they amend the regulations July fifth, 1988?

"Q. If they did, I'm not aware of that.

"A. In the middle of your project you were unaware of the amendment to the wetlands regulations in the town of Somers?

\* \* \*

"Q. Wouldn't you agree that these wetland regulations, if they existed, would have a significant impact on the design of the subdivision?

"A. Certainly."

[8] Although the defendants based a portion of their cross-examination of Shanley on a supposed change in the inland wetlands regulations, the defendants have not pointed to any evidence that this amendment was, in fact, adopted.

[9] We note that the first count of the defendants' counterclaim alleges negligence only, not negligence per se, and does not allege a violation of any regulation or amended regulation. The defendants did not move to amend their pleading to conform to the evidence. The trial court gave the defendants' requested jury instruction on negligence per se. The plaintiff did not object.

The trial court gave the following instruction to the jury on the issue of negligence per se. "In Connecticut, the unexcused violation of a statute, ordinance or administrative regulation is negligence per se or negligence as a matter of law. You have heard an admission by Mr. Shanley that, although he was the chief engineer for the project, he did not know the applicable Somers wetlands regulations. You have also heard testimony that [the plaintiff] filed with the conservation commission a subdivision map, which contained lots and roads in a wetlands area, in violation of section 6.4 of the inland wetlands and watercourse regulations of the town of Somers.

"You have heard testimony from witnesses and have been provided exhibits in the form of minutes from the meetings of the conservation commission which show that the commission requested on two separate occasions that [the plaintiff] remove the road and lots out of the wetlands, as contained on the plans they created and submitted, [defendants'] exhibits twelve and thirteen.

"If you find that [the plaintiff's] conduct was an unexcused violation of the town's regulations, you must find that there was negligence as a matter of law. You must then determine whether, as the [defendants] contend, this negligence per se proximately caused their injury by creating further delay in the subdivision approval process."

Our review of a trial court's refusal to set aside a verdict has been defined. "In determining whether a verdict should be set aside, the court is obligated first to review the evidence giving it a construction most favorable to sustaining the jury's verdict. . . . In addition, the trial court's refusal to disturb the jury verdict is entitled to great weight, and every reasonable presumption should be given in favor of its correctness. . . . In reviewing this issue, our sole responsibility is

to decide whether, on the evidence presented, the jury could fairly reach the conclusion they did." (Citations omitted; internal quotation marks omitted.) *Lester* v. *Resort Camplands International, Inc.*, 27 Conn. App. 59, 68–69, 605 A.2d 550 (1992). "It is the province of the jury to weigh the evidence and determine the credibility and the effect of testimony; and we must decide the question whether on the evidence presented, the jury could have fairly reached [its] verdict . . . ." (Internal quotation marks omitted.) *New London Federal Savings Bank* v. *Tucciarone*, 48 Conn. App. 89, 99, 709 A.2d 14 (1998).

To prove a claim of negligence or negligence per se, the defendant had to prove by a preponderance of the evidence each of the following elements: duty, breach, proximate cause and damages. See *Santopietro* v. *New Haven*, 239 Conn. 207, 225, 682 A.2d 106 (1996). The evidence cited in the briefs of both parties indicates that the evidence as to the elements was well controverted.[10] Jurors are the arbiters of fact, including credibility. See *State* v. *Sanchez*, supra, 50 Conn. App. 145. They are free to believe all, some or none of a witness' testimony. In the absence of interrogatories that explain a jury's verdict, we will not disturb the verdict where the record reveals that the factual issues were in dispute and the jury reasonably could have found as it did. The trial court, therefore, properly refused to set aside the verdicts in favor of the plaintiff.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[10] The jury heard evidence that the delay in the approval of the subdivision plan was due in part to drainage rights problems, clear cutting of wetlands, access approval and other nonengineering issues beyond the plaintiff's control.