[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE DEFENDANTS' MOTION TO SET ASIDE VERDICT AND MOTION FOR REMITTITUR
In this personal injury case, a trial before jury was held and a jury verdict was rendered for the plaintiff, Michael S. Blum against the defendants, Carlos Cruz, Ryder Truck Rental, Inc. and U.S. Food Service Inc. The jury found for the plaintiff on all the issues and rendered a verdict in favor of the plaintiff in the amount of $495,000 in economic damages and $325,000 in non-economic damages.
On November 1, 2002, the defendants filed a Motion to Set Aside the Verdict and Motion for Remittitur. Objections to these motions were filed by the plaintiff on November 15, 2002. After argument the court denied both motions. This memorandum addresses the denial of the motions seriatum.
 I. Re Motion to Set Aside the Verdict
The defendants seek to set aside the verdict on two grounds: 1) the court's granting of a motion which resulted in not allowing Dr. Lange to testify, and 2) comments of the court to defendants' counsel, after objection, regarding two individuals who were not called as witnesses by the plaintiff during the trial.
(a) Dr. Lange
The court's decision to preclude Dr. Lange's testimony was based on more than one reason. Defendants' focus in their motion challenges the court sustaining a Porter challenge to his testimony. However, this was not the only basis for which Dr. Lange's testimony was not allowed.
Dr. Lange was disclosed by the defendants very late, on or about September 3, 2002. The disclosure stated that Dr. Lange, based on a records review, was to give his opinion as to whether the plaintiff, as a result of his injuries, should be able to wear a lead apron. CT Page 3113
The plaintiff, a trained cardiologist, was required to wear a lead apron in order to perform invasive surgical procedures. It was his position that he could not wear the apron without such discomforting pain resulting from his lower back injury (damages from the accident in this matter) that made it impossible for him to stand still and perform the highly exacting work of an invasive cardiologist.
The case was tried starting October 15, 2002. On that date, the plaintiff moved to preclude Dr. Lange's testimony for untimely and inadequate disclosure by the defendants and because the Dauber/Porter[1]
standard was not met.
After the commencement of jury selection, on October 17, 2002, the court heard plaintiff's motion. The court found that the disclosure was late and not complete; however, the court was hesitant to preclude defendants' expert if no harm would befall the plaintiff, and so stated on the record. The court ordered that the plaintiff was entitled to take Dr. Lange's deposition so as to discover his opinion and basis therefor, so that plaintiff might properly prepare for a trial in which Dr. Lange would testify as an expert for defendants. In so doing, the motion to preclude was not granted; however, the court reserved to the plaintiff the right to request reconsideration of the motion after taking Dr. Lange's deposition.
Plaintiff renewed his motion to preclude after taking Dr. Lange's deposition. In hearing the renewal of the motion, the court received more information from counsel upon which to further rule. It had just been discovered that Dr. Lange was not going to be available for the trial days, so defendant sought to use plaintiff's discovery deposition for trial. The court ruled that the plaintiff was entitled to his discovery deposition prior to the trial deposition so that he could determine the opinions and bases of Dr. Lange, prior to receiving that information for trial purposes, which would have been unfair to plaintiff. The deposition of Dr. Lange proceeded.
A subsequent hearing was held thereafter on the motion to preclude at the request of the plaintiff. The court, in hearing the motion, read a complete transcript of Dr. Lange's testimony.
At argument, plaintiff continued to argue the motion to preclude based on both a Daubert/Porter challenge and unfair prejudice.
Dr. Lange's deposition testimony disclosed that his opinions were based upon a review of the plaintiff's documentary medical records: he reviewed CT Page 3114 the records of the plaintiff's treating physicians as well as his physical therapy results. While the plaintiff had an MRI, rather than review the film, Lange reviewed the radiologist's report regarding the film.
The expert opinion offered by Dr. Lange (that was precluded) was that based upon the injury suffered by the plaintiff, he should be able to successfully wear a lead apron in the performance of invasive cardiology. Having reviewed the transcript of Dr. Lange's testimony, the court found that Dr. Lange based his opinion on the following: his record review described above, his own wearing of a lead apron for neurosurgical procedures — an apron he could estimate the weight of, without knowing if it was the same weight as the apron worn by the plaintiff[2]
— his observation of a colleague who operated with a lead apron wearing a back brace, and his communications from defendants' counsel.
Dr. Lange's testimony was precluded by the court for the following reasons; it lacked proper foundation in that (1) Dr. Lange improperly correlated his experiences with a lead apron as a neurosurgeon to that of the plaintiff as a cardiologist without knowing the similarity, or lack thereof, in their respective apron weight and body position and movement while operating, (2) he compared the plaintiff to a colleague without any basis therefor, and (3) his knowledge of plaintiff's medical history was inadequate, with insufficient knowledge of the length and nature of the plaintiff's lower back pain.
The testimony of Dr. Lange was further precluded because his methodology failed to satisfy a Porter inquiry. Rather than utilizing an examination of plaintiff, or, in the alternative, simply a record review, Dr. Lange included as part of his basis for his opinion extraneous observations regarding his and a colleague's wearing of a lead apron. Indeed, Lange, himself, desired to examine the plaintiff prior to offering an opinion, but that did not occur. There was an improper and insufficient foundation for the offering of Lange's expert opinion. This is compounded by the prejudice to the plaintiff that would result from placing before a jury of lay people (who would be unaware that Lange's foundation is not a proper basis for an offering of an opinion for them to rely thereon) an opinion as to a key fact whether plaintiff could operate with a lead apron on.
Finally, as a third basis for excluding Lange's testimony, in light of the insufficient foundations and unorthodox methodology applied by Lange in arriving at his opinion, the court concluded that the lateness and inadequacy of disclosure was highly prejudicial and unfair to the plaintiff. CT Page 3115
For all of the above reasons, Dr. Lange's expert testimony was properly excluded. Accordingly, this basis for the Motion to Set Aside the Verdict is denied.
(b) The defendants also seek the court to set aside the verdict based upon a ruling given by the court during defense counsel's closing argument. During closing argument, defense counsel argued that the jury should consider that plaintiff did not call as witnesses two other drivers in this multi-car accident.
Certain other facts are relevant to the assertions here. During the trial, two witnesses testified as to issues of liability, the plaintiff and the defendant driver, Carlo Cruz. Their testimony was entirely consistent. The jury received no conflicting evidence on the issue of liability. Cruz testified that while driving he looked down to adjust his radio and when he looked up again, it was too late to stop and he hit an SUV which rammed a pickup which slammed into plaintiff's auto. Cruz acknowledged that if he was looking he would not have hit the SUV causing the chain of collisions.
No evidence was presented at trial as to the whereabouts or availability of the two other drivers who became subsequently involved in the accident.
Then, at closing argument, on the issue of liability, defense counsel argued the plaintiff's failure to call these two witnesses. After plaintiff's objection, the court instructed the jury that it was to draw no adverse inference from this. It is this ruling that is challenged now. While the defendant's own testimony acknowledged negligent conduct, the court allowed an argument that plaintiff failed to sustain his burden of proof. The ruling here was proper as a matter of law. Close, Jensonv. Lomangino, 51 Conn. App. 576 (1999).
For all the reasons stated, the motion to set aside verdict is denied.
 II. Motion for Remittitur
The defendants move for remittitur of the economic and noneconomic damages awarded by the jury. The court finds that there was a sufficient basis in the evidence to support the jury's verdict, and, that the jury's verdict does not shock the conscience.
(a) Basis in evidence. CT Page 3116
The plaintiff's expert witness, Kyle Kramer testified that the plaintiff's income as a noninvasive cardiologist would be anywhere from $25,000 (the mean) to $50,000 lower per year than as an invasive cardiologist. No expert testimony was offered by the defendants on this matter. Kramer was cross-examined; however, his opinion provided an adequate basis for the jury to rely on.
A jury could easily have found from the evidence that as a result of his injuries from the accident, and the resulting limitations and pain, that the plaintiff could no longer perform invasive cardiology and therefore would lose $25,000 per year income.
At the time of the trial, the plaintiff was 38 years old. If he worked to age 60, economic damages for plaintiff at $25,000 per year would easily support the jury verdict of $495,000 economic damages.
The accident occurred in March 1999. As stated at the time of trial in October 2002 (3 years, 6+/- months later), the plaintiff was 38 years old. His life expectancy in evidence before the jury was for an additional 37.7 years. The evidence before the jury of the pain, limitation of activities, and disability rating all support a non-economic damages of $325,000 (which if the jury inferred was for a life expectancy of 37.7 years) is less than $9,000 per year on average from the date of the accident.
The jury, from the evidence, could have found plaintiff suffered losses from his inability to perform invasive cardiology that he had trained years for, from his inability to hold or carry his infant son for more than about 10 minutes without significant pain, and from his inability to enjoy his avocations of skiing and other sports, and from the pain and injuries directly after the accident itself. Plaintiff's injuries caused him to spit up blood, and suffer severe low back pain for which he performed home physical therapy even to the date of the trial, 3 1/2 years after the accident. The jury would also have considered the nature of the impact, which caused $12,000 in property damage.
After considering all of the evidence before the jury, the court concludes that there is sufficient basis in the evidence for the jury's award of damages, as to both economic and non-economic damages, and, the award does not shock the conscience and, therefore, should remain undisturbed.
The motion for remittitur is denied.
Munro, J.