STATE OF CONNECTICUT *v.* MICHAEL K. HANNON
(AC 18208)

Foti, Hennessy and Mihalakos, Js.

Argued December 1, 1999—officially released February 8, 2000

*William S. Palmieri*, with whom, on the brief, was *John R. Williams*, for the appellant (defendant).

*Christopher T. Godialis*, assistant state's attorney, with whom, on the brief, were *James E. Thomas*, state's attorney, and *Edward R. Narus*, senior assistant state's attorney, for the appellee (state).

*Opinion*

FOTI, J. The defendant, Michael K. Hannon, appeals from the judgment of conviction, rendered after a jury trial, of manslaughter in the first degree in violation

of General Statutes § 53a-55 (a) (3).[1] On appeal,[2] the defendant claims that the trial court improperly instructed the jury on causation. We affirm the judgment of the trial court.

The jury reasonably could have found the following facts. On October 16, 1994, at approximately 3:30 p.m., the defendant stole two cartons of cigarettes from a convenience store in Tolland and fled in his automobile. The police were informed of the theft and were furnished the description of the defendant and his vehicle. Shortly thereafter, Trooper Rafael Morales of the Connecticut state police spotted the defendant's vehicle[3] on Interstate 84 and attempted to catch up to it without using his emergency lights or siren. When the defendant saw the trooper's vehicle, he exited the highway and turned onto Route 30 northbound. At that point, Morales turned on his lights and siren and followed the defendant. The defendant went through one red light at an intersection at a speed of approximately sixty miles per hour. Morales slowed to about forty miles per hour and turned off his lights and siren. The defendant continued northbound on Route 30 through traffic at nearly seventy miles per hour, cutting off cars and approaching

[1] General Statutes § 53a-55 (a) provides in relevant part: "A person is guilty of manslaughter in the first degree when . . . (3) under circumstances evincing an extreme indifference to human life, he recklessly engages in conduct which creates a grave risk of death to another person, and thereby causes the death of another person."

[2] The defendant also was convicted of assault in the first degree in violation of General Statutes § 53a-59 (a) (3), assault in the third degree in violation of General Statutes § 53a-61 (a) (3), as a lesser included offense of assault in the second degree, reckless endangerment in the first degree in violation of General Statutes § 53a-63 (a) and, in a separate file, engaging police in pursuit in violation of General Statutes § 14-223 (b).

Although the defendant listed on his appeal form the docket number of the judgment of conviction of engaging in pursuit, he raised no claim in this court as to that conviction, and we therefore dismiss that portion of his appeal.

[3] It was later determined that the vehicle being operated by the defendant was owned by his sister and had on it a stolen license plate.

the intersection with Parker Road. When he was about 300 feet from the intersection, the traffic light ahead of him turned red. The defendant, driving at a speed close to eighty miles per hour, neither slowed nor stopped but struck a vehicle in the intersection driven by one of the victims, Michael Mission, who had been southbound on Route 30 and was turning left across the northbound lane. Mission, who was sixty-nine years old, was seriously injured and was taken to Hartford Hospital for emergency treatment. After colliding with the Mission car, the defendant's vehicle spun out of control and struck a second vehicle that was turning right from Parker Road onto Route 30.[4]

Mission, who was admitted to the hospital's intensive care unit, suffered multiple broken ribs, some of which punctured his lungs, a fractured sternum, a small subdural hematoma and a fracture of the fibula. He also was bleeding within the liver, and had some bruising or bleeding in the adrenal gland and some bruising to the kidneys. At the time of his admission, Mission's injuries were serious and life threatening. An epidural catheter was inserted to administer medication, and he was placed on a ventilator. Mission also had an endotracheal tube inserted. While in intensive care he developed pancreatitis.

By October 31, 1994, Mission appeared to be recovering somewhat, but his condition worsened due to the pancreatitis. He died on November 6, 1994, as a result of injuries related directly to the collision between his and the defendant's vehicles.[5]

---

[4] Also injured in the collisions were Mission's wife, Janina Mission, who was a passenger in his car, and Denise Naumec, the driver of the second vehicle, along with her twelve year old daughter, Heidi Naumec, who was a passenger in that vehicle.

[5] Mission's treating physician and the state's chief medical examiner testified that Mission's death was most likely caused by a pulmonary embolism; both agreed that Mission died as a result of complications from the injuries received in the accident with the defendant.

The defendant's sole claim, which he concedes is unpreserved, is that the court improperly instructed the jury on proximate cause in connection with the charge of manslaughter in the first degree. He seeks review under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989),[6] or the plain error doctrine. Practice Book § 60-5.

The defendant claims that the jury could have found that the accident was the result of Mission's own negligence or that his death was not the direct result of injuries he suffered in the accident but of complications resulting from a heart attack or negligent treatment by the hospital, and that the court failed to articulate adequately the "niceties of the doctrine of intervening cause" and to instruct properly on the theory of defense. Because the right to a jury charge on any defense theory supported by the evidence is guaranteed by the fifth, sixth and fourteenth amendments to the United States constitution and by article first, § 8, of the Connecticut constitution, the court, he alleges, committed constitutional error. We review the defendant's claim because there is an adequate record and the claim is of constitutional dimension.

The court instructed the jury in relevant part as follows: "Now, the third and final element of the crime here is that the defendant's conduct caused the death of another person. This means that the defendant's con-

---

[6] "[A] defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free, therefore, to respond to the defendant's claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original.) *State* v. *Golding*, supra, 213 Conn. 239–40.

duct was the proximate cause of the victim's death. An act or omission to act is the proximate cause of death when it substantially and materially contributes, in a natural and continuous sequence, unbroken by any intervening cause, to the resulting death.

"It . . . is a cause without which the death would not have occurred. And it is a predominating cause, a substantial factor, from which the death followed as a natural consequence. It is not necessarily the last active cause or the act in point of time nearest to death.

"The . . . concept of proximate cause incorporates the notion that an accused may be charged with a criminal offense even though his acts were not the immediate cause of death. It is not necessary that the particular kind of harm that results from the defendant's act be intended or contemplated by him. Where the death or injury caused by the defendant's conduct is a foreseeable and natural result of that conduct, the law considers the chain of legal causation unbroken and holds the defendant criminally responsible.

"In this case, additionally, you must also consider the doctrine of intervening cause. The defendant claims that his conduct was not the proximate cause of the victim's death because there was an intervening cause that was the proximate cause of the victim's death.

"This requires that I explain to you the doctrine of intervening cause. . . . [T]his doctrine refers to a situation in which the defendant's conduct is a cause and factor of the victim's death. That is, the victim would not have died but for the defendant's conduct.

"But, nonetheless, some other circumstance has occurred. And that other circumstance does more than supply a concurring or contributing cause of death, but is, itself, unforeseeable and sufficiently powerful, in its effect, that it serves to relieve the defendant of criminal

responsibility for his conduct. In such a case, the defendant's conduct is not the proximate cause of the victim's death.

"Thus, the doctrine of intervening cause serves as a dividing line between two closely related factual situations.

"Number one. Where two or more acts or forces, one of which was set in motion by the defendant, combine to cause the victim's death, in which case, the doctrine of intervening cause will not relieve the defendant of criminal responsibility.

"And, number two. Where an unforeseeable act and force intervenes in such a powerful way as to become the proximate cause of the victim's death, in which case the doctrine of intervening cause will relieve a defendant whose conduct contributed, in fact, to the victim's death, from criminal responsibility.

"In other words, when more than one factor contributes, in a chain of events, to cause a victim's injury, in order to be the proximate cause of that injury, the defendant's conduct must have been a cause that necessarily set in operation the factors that accomplished that injury. Where the other circumstance . . . constitutes a concurring or contributing cause of the victim's death, in which case . . . the defendant will be held responsible. Or, whether the other circumstance constitutes an intervening cause of the victim's death, in which case the defendant will not be held responsible, is a question of fact for you, as jurors, to determine.

"Keep in mind, however, the defendant does not have any burden to prove an intervening cause. The burden rests on the state to prove that the defendant's conduct was the proximate cause of the victim's death, as I've explained the entire doctrine of proximate cause to you."

Thereafter, the court gave a supplemental instruction at the request of defense counsel. Although he did not object, counsel for the defendant asked the court to clarify that proximate cause issues applied to all four counts of the information relative to the victims' injuries. The instruction was as follows:

"You've heard me in terms of proximate cause. Discussions about proximate cause refer to . . . the doctrine of intervening cause. And just so that you . . . understand what the claim is with respect to intervening cause, there's two circumstances, during the course of the evidence, where the defense is claiming intervening cause.

"Number one, in terms of the . . . offenses that allege that death was caused, the claim is intervening cause, in that . . . it's alleged by the defense that the victim was getting better. And then, there was some medical situation that developed. And you heard evidence about a heart attack, and so on. That's . . . the claim with respect to intervening cause in that respect. . . .

"In the assault charges, where . . . the state is alleging that the defendant's conduct resulted in either physical injury or serious physical injury to the various victims, the defense's claim of intervening cause relates to the following: The circumstance where you heard evidence about Mr. Mission going into the intersection and perhaps contributing in some fashion to the cause of the injuries. That's where intervening cause comes in. That's where you consider it anyway during the course of your . . . deliberations. In those two respects.

"One, in terms of the proximate cause of death. And number two, in terms of the proximate cause of injuries."

The defendant's counsel did not object. Thereafter, the jury delivered a note to the court, asking: "What is the legal definition of the words proximate cause?" Following a brief colloquy with jurors and with counsel, the court gave the following supplemental instruction in answer to the note:

"All right. What I've done is prepared a supplemental instruction with respect to proximate cause. And you'll get a copy of this. I'm also going to read it to you now in open court. . . .

"So, you've already been instructed in detail with respect to the element of proximate cause. This supplemental instruction is by no means intended to be a substitute for those detailed instructions but rather, [is] intended to assist you in understanding those instructions.

"Though this instruction applies [to all charges], I will discuss proximate cause in terms of the proximate cause of [the] death of Michael Mission.

"You've heard . . . the testimony and arguments of the state to the effect that the defendant's conduct, in operating his vehicle at high speed and/or going through a red light, was the predominating cause or factor resulting in the death of Michael Mission.

"You've heard the testimony and arguments of the defense, to the effect that there were intervening causes constituting substantial factors with respect to the resulting death and injuries. Specifically, the conduct of Michael Mission in . . . the operation of his vehicle and/or Mr. Mission's heart attack or heart failure, independent of his injuries.

"Thus, you were confronted with a number of factors alleged to be substantial, predominating causes or circumstances resulting in death. Where there is credible evidence of a number of factors concurring and contrib-

uting to the death, the question is whether you were satisfied beyond a reasonable doubt that the defendant's conduct itself was a substantial factor and necessarily set in operation the factors that accomplished the death, even where the defendant's conduct was not the last active cause or the act nearest to death or the immediate cause of death.

"Was the defendant's conduct a substantial factor? And did the defendant's conduct set in motion the forces or acts that combined to cause the victim's death? If your answer is yes to both inquiries, beyond a reasonable doubt, then the . . . state has satisfied its burden. If you're not satisfied beyond a reasonable doubt as to both, then the state has not satisfied its burden.

"Where, given the same evidence of a number of factors concurring and contributing to the death, you find that an unforeseeable act or force intervened to such an extent as to become the predominating cause of death, then the state has not satisfied its burden or proof with respect to this element, even though the defendant's conduct was a contributing factor resulting in death.

"Was there an unforeseeable act or force intervening? And was it sufficient to become a predominating cause of death? If there was such an act or force or you have a reasonable doubt as to whether there was an act or force, then the state has not satisfied its burden.

"Bear in mind that the defendant has no burden to prove an intervening cause. The burden remains on the state to prove beyond a reasonable doubt that the defendant's conduct was the proximate cause."

Again there was no objection by defense counsel. The jury deliberated and reached its verdict.

"The primary purpose of a charge is to assist the jury in applying the law correctly to the facts that it has

found proven and to call the attention of the members of the jury, unfamiliar with legal distinctions, to whatever is necessary and proper to guide them to a correct decision in the case. *State* v. *Sanchez*, 50 Conn. App. 145, 153–54, 718 A.2d 52, cert. denied, 247 Conn. 922, 722 A.2d 811 (1998)." *State* v. *Abrahante*, 56 Conn. App. 65, 81, 741 A.2d 976 (1999). Our review of the entire instruction leads us to conclude that the charge achieved that purpose. We conclude that the charge was legally correct, containing at least the following elements: To find the defendant guilty the jury had to find that (1) the defendant's conduct contributed substantially, materially and in a direct manner to the injuries that resulted in the victim's death, and (2) the defendant's conduct was not superseded by an efficient, intervening cause that produced the injuries resulting in death. See *State* v. *Munoz*, 233 Conn. 106, 121, 659 A.2d 683 (1995). The instructions given allowed the jury to acquit the defendant if it found that Mission's negligence in the operation of his car contributed to the accident that resulted in his death or, that Mission's death resulted from a heart attack or by negligent treatment at the hospital.[7]

We conclude that it was not reasonably possible that the jury was misled. No injustice to the defendant resulted by reason of the court's instruction.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] If anything, the court's instructions were too favorable to the defendant in that the court did not specifically instruct the jury that a victim's contributory negligence is not a defense to manslaughter. See *State* v. *Alterio*, 154 Conn. 23, 29–30, 220 A.2d 451 (1966). The court also did not instruct the jury that negligent medical care is not an intervening cause sufficient to break the chain of causation of death in a manslaughter case. See *State* v. *Jacobs*, 194 Conn. 119, 125–26, 479 A.2d 226 (1984), cert. denied, 469 U.S. 1190, 105 S. Ct. 963, 83 L. Ed. 2d 968 (1985).