ROBERT M. ELLIOTT, P.C. *v.* MARK STUART
(AC 17937)

Landau, Spear and Hennessy, Js.

Argued January 26—officially released May 18, 1999

*David M. Fisher*, with whom, on the brief, was *Robert H. Weinstein*, for the appellant (defendant).

*Robert M. Levin*, for the appellee (plaintiff).

*Opinion*

LANDAU, J. In this collection action, the defendant, Mark Stuart, a dentist, appeals from the judgment of the trial court rendered in favor of the plaintiff law firm, Robert M. Elliott, P.C. On appeal, the defendant claims that the trial court improperly (1) sustained the plaintiff's objections to certain questions posed by the defendant during cross-examination, (2) permitted evidence

of the defendant's income to be admitted into evidence, (3) awarded excessive attorney's fees for the prosecution of the collection action and (4) accepted the affidavit of the plaintiff's counsel as to attorney's fees, which did not include contemporaneous time records. We affirm the judgment of the trial court.

Following a trial to the court, the court found the following facts. On November 13, 1995, the Connecticut state dental commission (commission) summarily suspended the defendant's license to practice dentistry because a young female patient complained that the defendant had stalked and harassed her. The patient alleged that the defendant, under the guise of needing to talk with her about her dental care, obtained the address of the patient's employer in Washington, D.C., from the patient's mother. The patient also alleged that the defendant went to her place of employment in an attempt to meet her socially. At the time the patient made her complaint, the defendant's license was in a probationary status. Four or five other patients had also complained to the commission about the defendant and his license had been suspended once previously.

On November 17, 1995, the defendant met with Robert M. Elliott, an attorney and principal of the firm, to obtain legal representation. The defendant represented to Elliott that he was losing $30,000 a month due to the suspension and that he wanted Elliott to take all steps necessary to restore his license. In the years immediately prior to the 1995 suspension, the defendant earned approximately $200,000 to $400,000 per year from his dental practice.

During their first meeting, the defendant signed a retainer agreement, which provided, in part, that the plaintiff's fee would be based on the amount of time spent and listed the hourly rates of the plaintiff's employees. The agreement also provided: "Balances on

your account are due and payable upon receipt of your statement. Interest will accrue on any outstanding balances after thirty days at ten percent per annum. Should you fail to pay your balances, you will be responsible for all costs of collection, including sheriff's fees and a reasonable attorney's fee."

The defendant knew and agreed that Elliott, the other attorneys and the paralegals in the firm would work on his case. Because the loss of his license prevented the defendant from earning a living, Elliott gave the defendant's case priority over other legal matters and assigned various aspects of the case to employees of the firm. The plaintiff was successful in having the defendant's dental license reinstated, but the defendant failed to pay the plaintiff in accordance with the retainer agreement. The plaintiff, therefore, commenced this collection action.

The trial court concluded that the work done by the firm was reasonable and necessary and that the result obtained was "almost miraculous" because the defendant's license to practice dentistry was reinstated on January 5, 1996, approximately six weeks after it was suspended. The trial court awarded the firm $13,637.33 for services rendered before the commission, $2275.73 in interest and $15,000 in attorney's fees for the collection action, plus costs. The defendant appealed.

Three of the defendant's claims on appeal are of an evidentiary nature. "It is well settled that [t]he trial court's ruling on the admissibility of evidence is entitled to great deference. *State* v. *Castonguay*, 218 Conn. 486, 497, 590 A.2d 901 (1991); *State* v. *Sharpe*, 195 Conn. 651, 659, 491 A.2d 345 (1985). [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . The trial court's ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make

*every reasonable presumption* in favor of upholding the trial court's ruling, and only upset it for a *manifest abuse of discretion.* . . . *State* v. *Coleman*, 241 Conn. 784, 789, 699 A.2d 91 (1997). Moveover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the defendant of substantial prejudice or injustice." (Emphasis in original; internal quotation marks omitted.) *Paige* v. *St. Andrew's Roman Catholic Church Corp.*, 247 Conn. 24, 37, 718 A.2d 425 (1998).

I

The defendant's first claim is that the trial court improperly sustained the plaintiff's objections to the defendant's cross-examining members of the firm with respect to the reasonableness of the services rendered and the fees charged. We disagree.

The portions of the defendant's cross-examination relevant to our analysis follow.

"[Defendant's Counsel]: Okay. Is it your understanding that Dr. Selig's involvement in the Stuart matter before the health department was in any way beneficial?

"[Plaintiff's Counsel]: I'm going to object, Your Honor. I'm not sure what the relevance of any of this is at this point.

"[Defendant's Counsel]: Well, Your Honor, it is my client's position that Dr. Selig was, obviously, crucial to the reinstatement of his license, and since Mr. Elliott is the senior partner and main mover on the file—by his own admission, I think—I'm trying to determine what he knew about Dr. Selig and Dr. Selig's involvement in the proceedings.

"The Court: Do I understand correctly that, as of January fifth, the license was reinstated?

"[Defendant's Counsel]: That's correct.

"[Plaintiff's Counsel]: Yes, Your Honor, on that date it was reinstated, following the reconsideration hearing.

"The Court: So, why does it matter? If this was a case attacking Attorney Elliott's competency and the manner in which he handled these hearings, perhaps this would be relevant. As I take it, it's not. I don't think it's relevant. I'll sustain the objection.

* * *

"[Defendant's Counsel]: Wasn't Judge Maloney's direction to you that an injunction was an inappropriate remedy and that you should have, that the administrative appeal was the sole proceeding that was available to you?

"[Plaintiff's Counsel]: Your Honor, I'm going to object again, I—

"The Court: Sustained.

"[Plaintiff's Counsel]:—think he's belaboring something.

"The Court: I've heard enough of this line.

* * *

"[Defendant's Counsel]: Okay. And did you determine at that time that an administrative appeal might be appropriate?

"[Plaintiff's Counsel]: I'm going to object, Your Honor. I believe on direct . . . .

"The Court: Sustained.

* * *

"[Defendant's Counsel]: Was a motion for stay ever filed?

"[Plaintiff's Counsel]: I'm going to object. Again, relevance.

"The Court: Sustained.

"[Defendant's Counsel]: Now, with the exception of my handwritten notes at the top . . . is that the sum and substance of Judge Maloney's decision?

"[Plaintiff's Counsel]: I'm going to object, Your Honor. I don't know what the relevance of Judge Maloney's decision might be at this point in time.

"[Defendant's Counsel]: Well, it is our position, Your Honor, that Judge Maloney's decision, as short and succinct as it was, clearly indicates that the bringing of the injunction was not an appropriate proceeding, and I'm going to offer that, this decision as an exhibit.

"The Court: I'll sustain the objection. I thought I made it clear, whether or not, ultimately, certain legal pathways are successful, when one's client is in the situation Dr. Stuart was in, and the fact that certain things are brought and are unsuccessful is not necessarily not deserving of compensation, and my feeling is I probably would have done the same thing they did, so if that doesn't convince you not to pursue this avenue I hope it does.

\* \* \*

"[Defendant's Counsel]: And that's a memo from you to Mr. Elliott regarding that phone call with Mr. Oaken?

"[Witness]: Correct.

"[Defendant's Counsel]: I offer it.

"[Plaintiff's Counsel]: I'd inquire for what purpose.

"[Defendant's Counsel]: To substantiate through documentary evidence the testimony that just came in.

"The Court: But what's the relevance of that testimony? Mr. Oaken's not on trial here. I don't understand

Mr. Oaken—what the relevance of his referral fee to this case is.

"[Defendant's Counsel]: Well, Your Honor, it has been my client's position that he has been overbilled, overcharged. Okay? That's what we've been trying to prove here, and a claim by another attorney for a referral fee which shows some motive or basis for my client's position that he was overcharged.

"The Court: I'll sustain the objection."

"[B]efore a party is entitled to a new trial because of an erroneous evidentiary ruling, he or she has the burden of demonstrating that the error was harmful. . . . When determining that issue in a civil case, the standard to be used is whether the erroneous ruling would likely affect the result. . . . Any testimony in a case that tends of itself or in connection with other testimony to influence the result on a fact in issue is material. If the testimony would tend to affect the verdict of the jury, it meets the test of materiality." (Citations omitted; internal quotation marks omitted.) *Swenson* v. *Sawoska*, 215 Conn. 148, 153, 575 A.2d 206 (1990). The testimony that the defendant attempted to put into evidence as cited above is not material because, as the trial court correctly noted, it is not relevant to the plaintiff's claim for legal fees.

"In the context of a civil case, our Supreme Court, in accepting a common law right to cross-examination, stated '[t]he right of cross-examination is not a privilege but [is] an absolute right and if one is deprived of a complete cross-examination he has a right to have the direct testimony stricken.' . . . This . . . does not, however, permit the defendant to present evidence that is irrelevant or otherwise inadmissible. . . .

"[In] . . . matters pertaining to control over cross-examination, a considerable latitude of discretion is

allowed. . . . The determination of whether a matter is relevant or collateral, and the scope and extent of cross-examination of a witness, generally rests within the sound discretion of the trial court. . . . Every reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Citations omitted; internal quotation marks omitted.) *Close, Jensen & Miller* v. *Lomangino*, 51 Conn. App. 576, 580–82, 722 A.2d 1224, cert. denied, 248 Conn. 905, 731 A.2d 306 (1999).

We dealt with this question of relevancy in our very recent decision in *Close, Jensen & Miller*, saying that "[t]o analyze the defendants' claim, we look to the allegations of the complaint. Very simply, it is a collection action. The plaintiff was required to allege and prove that it was engaged to provide services for the defendants, that the services were provided, the amount of time it took to provide the services, and the amount and reasonableness of its fees and other expenses it incurred on behalf of the defendants." Id., 583–84. Therefore, the tack taken by the defendant to question, on cross-examination, the firm's strategy is simply not relevant to the fact that services were provided and the desired result obtained. As the trial court noted, the firm's competency and the manner in which it handled the matter was not at issue.

First, the question concerning Selig, the defendant's psychiatrist, and whether he was crucial to the reinstatement of the defendant's license is not relevant to whether the firm provided legal services and should be paid its fee. Furthermore, there was evidence that Selig did not appear at the hearing or, any time before the defendant's license was reinstated.

The second question concerning the refusal by the trial court, *Maloney, J.*, to grant an injunction to restore

the defendant's license because the defendant had not exhausted his administrative remedy, again, is not relevant to the question of services rendered and fees owed. As the trial court in this case noted, although not all efforts taken by an attorney on behalf of a client may produce the ultimate result, that is not a reason to deny the attorney his fee for reasonable efforts made. The trial court also noted that, given the defendant's objective, it, too, may have employed a variety of strategies to obtain the result desired.

The third question concerned whether the plaintiff ever filed a motion for stay. The question second-guesses the strategies employed by the plaintiff to achieve the defendant's goal of getting back his dental license. The question is not relevant because the issue before the trial court was not whether the plaintiff handled the matter in a competent way, but payment of the attorney's fees for services rendered.

The last question regarding Oaken and a referral fee is also irrelevant because the plaintiff did not bill the defendant for any communication it had with Oaken and did not pay Oaken a referral fee.

We conclude, therefore, that the trial court did not abuse its discretion by sustaining the plaintiff's objections to the defendant's cross-examination.

II

The defendant's second claim is that the trial court improperly permitted the plaintiff to put into evidence the defendant's income for the years prior and subsequent to the time that it rendered legal services. We are not persuaded.

A portion of the plaintiff's cross-examination of the defendant is relevant to our resolution of this claim.

"[Plaintiff's Counsel]: How much do you earn a year from the practice of dentistry?

"[Defendant's Counsel]: Objection; relevance.

"[Plaintiff's Counsel]: Your Honor, I think it's directly relevant to the value of the services on an applied-contract basis.

"[Defendant's Counsel]: No, it's quantum meruit. It's for services rendered, not what his benefit is.

"[Plaintiff's Counsel]: I believe that the rules specifically state that the result is one aspect of how you determine a reasonable fee, Your Honor, and I could direct the court to [*Khan* v. *Arrindell*, Superior Court, judicial district of New Haven, Docket No. CV-95-0378302 (August 13, 1997) (3 Conn. Ops. 964)] where they have a fairly good discussion of the rules of professional conduct as being appropriate in this consideration. It's at 3 Connecticut Opinions 964. I can leave this with the court.

\* \* \*

"[Plaintiff's Counsel]: It specifically deals with fees customarily charged for similar service and the results obtained, as well as the court's ability to take and exercise its own discretion in determining fees allowable because courts have a general knowledge of what is reasonable for services stated and described.

"[Defendant's Counsel]: The result is that they got his license back, not—it is not relevant how much money he makes once they accomplish that.

"[Plaintiff's Counsel]: I think it's directly relevant. Without his license he could not earn any money from dentistry. I'm not asking him how much he makes from another part of his livelihood, if he has related businesses or anything else, but what does he earn through that license. I think it's directly to this case.

"The Court: I'll allow it.

"[Plaintiff's Counsel]: I would offer this . . . . I don't have a copy. If I could have a copy made. Dr. Stuart, how much do you make a year practicing dentistry?

"[Defendant's Counsel]: Well, time period, please.

"[Plaintiff's Counsel]: The two years prior to your suspension in November of 1995 and the last twelve months.

"[Defendant's Counsel]: Relevance as to the last twelve months, Your Honor. Objection.

"The Court: I'll allow it. They're both relevant."

The defendant's income, both prior and subsequent to the suspension of his license, was relevant to the value of the services rendered, especially here where the defendant challenged, in part, the amount of time the attorneys in the firm spent working on the file. When the defendant approached Elliott, he represented to him that without his license he was losing $30,000 a month in income. The defendant's livelihood depended on the license. The amount of income the defendant received under the auspices of his license goes to his motivation in wanting his license restored expeditiously and explains why Elliott made the case a priority and directed all members of the firm to work on it. The trial court did not, therefore, abuse its discretion in admitting the evidence.

## III

The defendant's third and fourth claims are interrelated. The defendant claims that the trial court improperly awarded $15,000 in attorney's fees for the prosecution of the collection action, which, he claims, is clearly excessive and, further, that the trial court accepted an affidavit from trial counsel that did not include contemporaneous time records. We disagree

that the fees were excessive and that the trial court improperly accepted trial counsel's affidavit.

During the trial, the court heard testimony that Elliott was familiar with the rules of professional conduct concerning the reasonableness of legal fees; see rule 1.5 (a) (4) of the Rules of Professional Conduct;[1] and that the hourly fee for his services was $50 to $60 less than the rate charged by attorneys in the area for trial work. The amount of attorney's fees charged in the collection action was $18,040.54 for the plaintiff[2] and $10,175 for trial counsel, who billed at the rate of $250 per hour. The total bill was $28,215.54. The trial court awarded the plaintiff $15,000, more than half of the fees requested. The defendant objects to the trial court's award of legal fees because the affidavit of the plaintiff's trial counsel claimed fees based on 40.7 hours, but itemized fees for only 24.75 hours.

"Time spent is but one factor in determining the reasonableness of an attorney's fee. Although the better practice is for an attorney . . . to maintain time records, the failure to do so does not prelude the court from determining and awarding an attorney's fee. Indeed, as we . . . stated: Courts have a general

[1] Rule 1.5 (a) of the Rules of Professional Conduct provides: "A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:

"(1) The time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

"(2) The likelihood, if made known to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

"(3) The fee customarily charged in the locality for similar legal services;

"(4) The amount involved and the results obtained;

"(5) The time limitations imposed by the client or by the circumstances;

"(6) The nature and length of the professional relationship with the client;

"(7) The experience, reputation, and ability of the lawyer or lawyers performing the services; and

"(8) Whether the fee is fixed or contingent."

[2] The plaintiff was represented by its attorney employees until the time of trial.

knowledge of what would be a reasonable attorney's fee for services which are fairly stated and described. *Appliances, Inc.* v. *Yost*, 186 Conn. 673, 680, 443 A.2d 486 (1982). [C]ourts may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees. . . . The court [is] in a position to evaluate the complexity of the issues presented and the skill with which counsel had dealt with these issues. *Miller* v. *Kirshner*, 225 Conn. 185, 201, 621 A.2d 1326 (1993)." (Internal quotation marks omitted.) *Andrews* v. *Gorby*, 237 Conn. 12, 24, 675 A.2d 449 (1996).

Although the defendant asks us to consider holdings from courts in other jurisdictions, *Lewis* v. *Coughlin*, 801 F.2d 570 (2d Cir. 1986), *Davis* v. *Little*, 118 F.R.D. 304 (D. Conn. 1988), and *Orshan* v. *Macchiarola*, 629 F. Sup. 1014 (E.D.N.Y. 1986), we decline that invitation in light of the rule of the *Andrews* court. The affidavits submitted to the trial court show work done by the plaintiff's trial counsel over a period of seven months that required reviewing numerous documents, attending depositions, making telephone calls and preparing for and conducting trial. The trial court is deemed knowledgeable as to the fees charged by attorneys in the area for the nature of the work provided. Our review of the evidence before the trial court discloses that the trial court did not abuse its discretion.[3]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[3] At oral argument before us, the defendant argued that attorney's fees are limited to 15 percent of the recovery. This claim was never raised before the trial court or in the defendant's brief on appeal. Parties may not raise issues for the first time during oral argument. Therefore, we will not consider the claim. See *Chapman* v. *Ellington*, 33 Conn. App. 270, 278–79 n.12, 635 A.2d 830 (1993).