[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff moves pursuant to 42 U.S.C. § 1988 for an award of attorney's fees and costs totaling $267,850.15 for services rendered in the trial and appeal of this action. Attorney's fees in the amount of $17,550.00 plus costs of $1,930.15 are awarded. CT Page 7184
The plaintiff, Eric Ham, brought this action against the defendants, New Haven police department detectives Joseph Greene and Michael Sweeney, in August 1991, charging each defendant with federal civil rights claims pursuant to 42 U.S.C. § 1983 for false arrest and malicious prosecution and with common law claims of false arrest, malicious prosecution, intentional infliction of emotional distress and negligence. The plaintiff, who was arrested on February 13, 1991, for the January 20, 1991 murder of Markiest Alexander and first degree assault of Alfred Brown, alleged that the defendants knowingly made misleading statements on and omitted material information from their affidavit in order to obtain the arrest warrant. The case was tried to a jury before Judge Thomas J. Corradino. The jury returned a verdict in favor of the plaintiff, and the court rendered judgment thereon, approving a total award of $100,000 in compensatory damages for the federal civil rights claims and common law claims and an award of $800,000 in punitive damages for the federal civil rights claims. The court also awarded the plaintiff additional punitive damages of $30,000, the cost of litigation, on the common law claims. On appeal, the Connecticut Supreme Court affirmed the judgment of the trial court and denied the defendants' subsequent motion for reargument or reargument en banc. On October 12, 1999, the United States Supreme Court denied the defendants' petition for a writ of certiorari. See Ham v. Greene, 248 Conn. 508, 729 A.2d 740 (1999), cert. denied, ___ U.S. ___, 120 S.Ct. 326, 145 L.Ed.2d 254 (1999).
Before the court are the plaintiff's supplemental motions, dated July 28, 1999, October 12, 1999, November 9, 1999, and December 20, 1999, for attorney's fees and costs and the plaintiff's motion, dated November 8, 1999, for postjudgment interest. The supporting affidavits of the plaintiff's attorney, William S. Palmieri, indicate that fees and costs are sought in connection with the following: (1) prosecution of this action from the trial stage through the denial of the defendants' motion to the Connecticut Supreme Court for reargument, (2) opposition of the defendants' petition for a writ of certiorari to the United States Supreme Court, (3) opposition of the motion for advice filed by the City of New Haven in connection with an action brought by the State of Connecticut against the plaintiff and (4) prosecution of the plaintiff's present motions for attorney's fees and costs and postjudgment interest.
 I
Title 42 of the United States Code, § 1988 (1994) provides in relevant part that in actions brought pursuant to 42 U.S.C. § 1983
"the court, in its discretion, may allow the prevailing party a reasonable attorney's fee as part of the costs." The calculation of a reasonable attorney's fee begins with multiplying the number of hours reasonably spent on the litigation by a reasonable hourly fee. This CT Page 7185 calculation yields an amount called the "lodestar." Blum v. Stenson,465 U.S. 886, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984); Hensley v.Eckerhart, 461 U.S. 424, 103 S.Ct. 1933, 79 L.Ed.2d 40 (1983); Cohen v.West Haven Board of Police Commissioners, 638 F.2d 496, 505 (2d Cir. 1980).
 A.
The plaintiff seeks recovery of attorney's fees incurred from January 14, 1996, to September 18, 1996, a period which encompasses the trial stage of this action. Since the court finds that the plaintiff already has been fully awarded attorney's fees for this time period, the motion is denied.
As discussed in the Connecticut Supreme Court's decision on appeal, the jury returned a verdict in favor of the plaintiff on both the federal and common law claims. Ham v. Greene, supra, 248 Conn. 518. In addition to the $800,000 in punitive damages awarded for the federal civil rights violations, the jury determined that an award of punitive damages should be made in connection with the common law violations. Id., 534. The determination of the proper amount of those damages was left to the trial court. Id. The trial court relied on the costs of litigation as the means by which to determine the amount of state punitive damages. Id. Using a fair hourly rate of $150 per hour for 200 hours of work, the trial court awarded $30,000 additional punitive damages. Id., 518-19.
In Connecticut, the principal purpose of common law punitive damages is to fully compensate the plaintiff and, thus, such damages are properly limited to the plaintiff's expenses of litigation less taxable costs.Barry v. Loiseau, 223 Conn. 786, 825-27, 614 A.2d 414 (1992); Lord v.Mansfield, 50 Conn. App. 21, 27-28, 717 A.2d 267, cert. denied,247 Conn. 943, 723 A.2d 321 (1998). Thus, attorney's fees are a component of common law punitive damages. Roman v. Johnson, 48 Conn. App. 498, 503,710 A.2d 186 (1998).
The plaintiff has been fully compensated for attorney's fees incurred for the trial of the case by the $30,000 award of common law punitive damages. The plaintiff argues, however, that the $30,000 award represents full compensation for fees incurred in connection with the prosecution of the common law claims only and that he is entitled to some additional award of attorney's fees pursuant to § 1988 for counsel's time and effort expended in the pursuit of his federal civil rights claims. The plaintiff argues that additional time necessarily was devoted to the federal claims since the elements of an action under § 1983 differ from the common law causes of action for which he was awarded attorney's fees. CT Page 7186
The issue raised by the plaintiff is closely related to that which occasionally arises in civil rights litigation where a plaintiff prevails on some claims but not others and seeks attorney's fees pursuant to § 1988. In such cases, a court may properly refuse to award fees for services in connection with the unsuccessful claims. See Hensley v.Eckerhart, supra, 461 U.S. 435. This approach works in those cases where a plaintiff presents in one lawsuit distinctly different claims for relief that are based on different facts and legal theories, and, therefore, counsel's work on one claim is unrelated to his work on another claim. See id., 434-35. In other cases, however, each of a plaintiff's claims may involve a common core of facts and be based on related legal theories, leading the United States Supreme Court to observe that in such cases "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims." Hensley v. Eckerhart, supra, 461 U.S. 435; see also LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 762 (2d Cir. 1998);Amato v. City of Saratoga Springs, 991 F. Sup. 62, 67-68 (N.D.N.Y. 1998).
This is such a case where counsel's work on the federal claims cannot be extricated from his work on the common law claims. As the trial judge, Judge Corradino, observed in making his award of punitive damages: "[B]oth federal claims were based on the same matrix of facts . . . ."Ham v. Greene, Superior Court, judicial district of New Haven, Docket No. 32275 (May 8, 1997, Corradino, J.) (19 Conn.L.Rptr. 371, 375). "[T]he state and federal claims are inextricably bound not only factually but legally. Thus, federal malicious prosecution is basically the equivalent of state malicious prosecution and, since this case involves a warrant arrest, those two claims involve many issues that arise in the prosecution of the federal false arrest claim. It is hard to parcel out in any meaningful manner how much time an attorney could be said to have spent prosecuting one set of claims as opposed to another set of claims."Id., 376. Indeed, on this record, it is impossible.[1] Judge Corradino further cautioned, "that if the plaintiff is to be compensated at some point for litigation expenses in pursuing the federal claims . . . the court at the end of these proceedings should be careful not to make a double award for the costs of litigation." Id.
"[T]he decision whether to award fees under § 1988 is discretionary." Ham v. Greene, supra, 248 Conn. 535. "A prevailing plaintiff should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." (Internal quotation marks omitted.) Hensley v. Eckerhart, supra, 461 U.S. 429. Here, there are special circumstances. In light of the strong public policy of CT Page 7187 avoiding a double recovery; Enquist v. General Datacom, 218 Conn. 19, 26
n. 6, 587 A.2d 1029 (1991); the plaintiff's previous compensation for her attorney's fees would make another such payment unjust. See Nichols v.The Lighthouse Restaurant, Inc., 246 Conn. 156, 167-68, 716 A.2d 71
(1998) (double recovery against public policy and unjust). Although the elements under § 1983 differ from the common law causes of action for malicious prosecution and false arrest, the § 1983 claim subsumed these state law claims. The additional element of the § 1983 claim, that the defendants acted under color of law, was admitted by the defendants at trial.[2]
The plaintiff, therefore, has been fully compensated for attorney's fees for the trial of this case, and his request for additional attorney's fees pursuant to § 1988 is denied.
 B.
The plaintiff also requests an award of attorney's fees for services rendered in connection with opposing a motion for advice filed by the City of New Haven in an action brought against the plaintiff by the State. The defendants oppose this request. Additional facts are necessary for the presentation of this claim.
The plaintiff may not have murdered Markiest Alexander or shot Alfred Brown on January 20, 1991. He did, however, shoot Alex Santana and murder Marilyn Flores on May 5, 1993, and has been convicted of those and related crimes. See State v. Ham, 55 Conn. App. 281, 739 A.2d 1268
(1999), cert. denied, 252 Conn. 916, 743 A.2d 1128 (2000). The plaintiff's total effective sentence for those crimes is fifty years. While the appeal from the judgment in the present action was pending before the Connecticut Supreme Court, the State of Connecticut brought an action for damages for the anticipated cost of the plaintiff's incarceration and obtained a garnishment of the City of New Haven as the plaintiff's debtor. The city subsequently filed a motion for advice, asking where the money it owed the plaintiff should be held during the pendency of the state's action.[3] The plaintiff seeks attorney's fees for services rendered in connection with opposing the city's motion for advice.
Section 1988 provides in relevant part that the prevailing party may be awarded attorney's fees "[i]n any action or proceeding to enforce a provision of sections 1981, 1982, 1983, 1985, and 1986 of this title, title IX of Public Law 92-318 . . . or title VI of the Civil Rights Act of 1964 . . . ." "The statute should be so construed as to limit it to proceedings fairly falling within its terms." Connecticut Bank TrustCo. v. Hurlbutt, 157 Conn. 315, 329, 254 A.2d 460 (1968). CT Page 7188
The city's motion for advice is not any such action identified by § 1988. The plaintiff has not identified any other statute that would authorize an award of attorney's fees to him. Therefore, the plaintiff is not entitled to an award pursuant to § 1988 for his attorney's fees incurred in connection with the city's motion for advice. Smart SMR ofNew York, Inc. v. Zoning Commission, 9 F. Sup.2d 143, 152 (D. Conn. 1998).
 C.
The plaintiff seeks an award of attorney's fees for services rendered postverdict, from September 24, 1996 to the time of the presentation to this court of his motion for attorney's fees. This period encompasses the appeal to the Connecticut Supreme Court, the defendants' motion for reargument, and the defendants' petition for a writ of certiorari to the United States Supreme Court.
"We begin with the statutory language, which provides simply for `a reasonable attorney's fee as part of the costs.' 42 U.S.C. § 1988."Missouri v. Jenkins, 491 U.S. 274, 285, 109 S.Ct. 2463, 105 L.Ed.2d 229
(1989). The reasonable attorney's fees to which a party is entitled includes fees incurred in connection with appeals. Murphy v. Lynn,118 F.3d 938, 952-53 (2d Cir. 1997); Orchano v. Advanced Recovery, Inc.,107 F.3d 94, 101 (2d Cir. 1997); Conservation Commission v. Price,5 Conn. App. 70, 74, 496 A.2d 982 (1985).
"The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Hensley v. Eckerhart, supra, 461 U.S. 433. "The resulting amount is called the lodestar figure."Smart SMR of New York, Inc. v. Zoning Commission, supra, 9 F. Sup.2d 147.
 1.
In determining the number of hours reasonably expended, the court must exclude hours that are excessive, redundant or otherwise unnecessary.Hensley v. Eckerhart, supra, 461 U.S. 434; Orchano v. Advanced Recovery,Inc., supra, 107 F.3d 98; Lunday v. City of Albany, 42 F.3d 131, 133
(1994). "The task of determining a fair fee requires a conscientious and detailed inquiry into the validity of the representations that a certain number of hours were usefully and reasonably expended." Lunday v. City ofAlbany, supra, 134 (remanding award of attorney's fees and directing magistrate judge to critically review counsel's time records). The court must "`examine the hours expended by counsel and the value of the work product of the particular expenditures to the client's case. Efforts put CT Page 7189 into research, briefing and the preparation of a case can expand to fill the time available, and some judgment must be made in the awarding of fees as to diminishing returns from such further efforts. . . . In making this examination, the . . . court does not play the role of an uninformed arbiter but may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions of the parties.'" Gierlinger v. Gleason, 160 F.3d 858, 876 (2d Cir. 1998), quoting DiFilippo v. Morizio, 759 F.2d 231, 235-36 (2d Cir. 1985).
"To establish the entitlement to an attorney's fees award, a fee applicant bears the burden of proving the reasonableness of the requested rates and hours. . . . As the Second Circuit has warned, `attorney's fees are to be awarded with an eye to moderation, seeking to avoid either the reality or the appearance of awarding windfall fees.'" (Citation omitted.)Smart SMR of New York, Inc. v. Zoning Commission, supra, 9 F. Sup.2d 147, quoting New York State Assn. for Retarded Children, Inc. v. Carey,711 F.2d 1136, 1139 (2d Cir. 1983). A party seeking an award of attorney's fees must support the application with contemporaneous time records of work performed. Lewis v. Coughlin, 801 F.2d 570, 577 (2d Cir. 1986); New York State Assn. for Retarded Children, Inc. v. Carey, supra, 1148; Smart SMR of New York, Inc. v. Zoning Commission, supra, 150; Amatov. City of Saratoga Springs, supra, 991 F. Sup. 64-65; Giarrusso v. Cityof Albany, 174 App.Div.2d 840, 571 N.Y.S.2d 141, 143 (1991).[4]
Here, the plaintiff's motion is accompanied by what purports to be contemporaneous time records. The plaintiff's attorney claims that during the time period in question he spent over 453 hours on this case. The accuracy of this data is sworn to by the plaintiff's attorney. The defendants, while not disputing the plaintiff's entitlement to attorney's fees, nonetheless argue that the hours claimed are grossly, indeed absurdly, excessive. The court agrees.
While it is unnecessary to examine every item of legal time claimed by the plaintiff; Lunday v. City of Albany, supra, 42 F.3d 134; certain items exemplify the excessiveness of the plaintiff's statement of services: 13.5 hours preparing for the preargument conference; 123.5 hours of research or "research/outline" for his appellate brief; over 120 hours drafting or revising the argument in his appellate brief; and approximately 46 hours preparing for oral argument. While the claimed number of hours expended appears outrageous on its face; see Amato v.City of Saratoga Springs, supra, 991 F. Sup. 65 (finding counsel's "claimed hours are so shockingly high as to be per se unreasonable");Lunday v. City of Albany, supra, 42 F.3d 134 (finding counsel's billing records "in certain respects eyebrow-raising"); several other factors militate this conclusion. CT Page 7190
First, while every case involves a unique matrix of law and facts;Stoddard v. Bird, 1 Kirby (Conn.) 65, 69 (1786) (Dyer, J., dissenting); the issues on appeal were not novel. Clarke v. Frank, 960 F.2d 1146, 1153
(2d Cir. 1992) (considering novelty issues in concluding claimed attorneys fees excessive); Amato v. City of Saratoga Springs, supra,991 F. Sup. 66 (same). "In determining the reasonableness of a fee, a court must consider the facts of the particular case, including the novelty and difficulty of the issues presented." Smart SMR of New York,Inc. v. Zoning Commission, supra, 9 F. Sup.2d 151. The principal issues on appeal were whether there was probable cause for the arrest warrant as matter of law and whether the defendants were entitled to prevail as a matter of law on their defense of qualified immunity. These issues were resolved by reference to settled state and federal case law.[5]
Second, the principal issues on appeal had been briefed by the plaintiff, relying on the same case law, before the trial court. As the plaintiff himself stated in his appellate brief: "After careful review and extensive briefing and argument by counsel, in which all issues raised in the instant appeal were presented to the court, the trial court upheld each and every aspect of the jury's decision."
Third, the same lawyer, Attorney Palmieri, represented the plaintiff both at trial and on appeal. While the quality of advocacy can sometimes be compromised by this practice, the lawyer who represents his client both at trial and on appeal need not spend as much time acquainting himself with the trial court record as does a lawyer who is newly retained for purposes of handling the appeal. As for the size of the record, it is significant that the trial judge observed that "the trial was of moderate length and on a few of the days a full seven hour day was not put in by the court and the parties." Ham v. Greene, supra,19 Conn.L.Rptr. 377.
Fourth, as Attorney Palmieri's affidavits in support of his motions for attorney's fees state, his "primary areas of practice have been civil rights law and criminal defense, in both the trial and appellate fora." This case, both at trial and on appeal, dealt primarily with civil rights law and criminal law. It is inconsistent for Palmieri to profess such expertise yet claim that he expended over 120 hours on research for the appeal.
Fifth, in his affidavits, Attorney Palmieri states that he has briefed and argued over thirty appeals before state and federal courts.[6] Such experience ought to enable counsel to readily recognize what has to be done on appeal and to do it in less time than it takes a novice.
Sixth, Attorney Palmieri's claim that he expended 13.5 hours preparing CT Page 7191 for the preargument conference in connection with the appeal to the Connecticut Supreme Court is shockingly high. Even assuming that he expended that amount of time — and the court cannot find that he did — the relevant issue is whether a reasonable attorney would have engaged in a similar time expenditure. Grant v. Martinez, 973 F.2d 96,99 (2d Cir. 1992), cert. denied, 506 U.S. 1053, 113 S.Ct. 978,122 L.Ed.2d 132 (1993); Smart SMR of New York, Inc. v. Zoning Commission, supra, 9 F. Sup.2d 152; Helbrans v. Coombe, 890 F. Sup. 227, 233
(S.D.N.Y. 1995). The court thinks not. While counsel should arrive at a preargument conference prepared to discuss the issues that may arise during the conference,[7] there undoubtedly have been few cases in the history of Connecticut jurisprudence in which any lawyer, let alone a lawyer who was also trial counsel, has spent thirteen hours preparing for a preargument conference.
Attorney Palmieri also claims that he expended 107.5 hours reviewing the defendants' petition for a writ of certiorari filed with the United States Supreme Court, researching the issues contained therein and drafting a brief in opposition to defendants' petition. The court has examined the plaintiff's twenty-nine page brief in opposition. Eleven pages of that brief is a regurgitation of the facts drawn largely from the plaintiff's brief filed with the Connecticut Supreme Court and that court's own opinion. Although Attorney Palmieri's work product is well researched, well reasoned and very well written, his claim that he expended 107.5 hours on it is utterly fantastic and implausible.[8]
Because of the court's conclusion that Attorney Palmieri has grossly and shockingly overstated in his affidavit the number of hours he devoted to the appeal, the court is left primarily with the record, including the appellate briefs, on which to estimate the actual hours he expended, together with its experience generally. "In calculating the number of `reasonable hours,' the court looks to `its own familiarity with the case and its experience with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties.'" Clarke v.Frank, supra, 960 F.2d 1153, quoting DiFilippo v. Marizio, supra, 759 F.2d 236. "Time spent is but one factor in determining the reasonableness of an attorney's fee. Although the better practice is for an attorney . . . to maintain time records, the failure to do so does not prelude the court from determining and awarding an attorney's fee. . . . Courts have a general knowledge of what would be a reasonable attorney's fee for services which are fairly stated and described." (Internal quotation marks omitted.) Andrews v. Gorby, 237 Conn. 12, 24, 675 A.2d 449
(1996); see Robert M. Elliott, P.C. v. Stuart, 53 Conn. App. 333, 345-46,730 A.2d 1176, cert. denied, 249 Conn. 928, 733 A.2d 848 (1999).
Based on submissions of counsel, the court's examination of the record CT Page 7192 and its own knowledge and experience in such matters, the court finds that Palmieri reasonably expended seventy-five hours from September 24, 1996, to the affirmance of the judgment by the Connecticut Supreme Court and another forty-two hours in connection with filing the plaintiff's brief in opposition to the defendants' petition for a writ of certiorari to the United States Supreme Court.
 2.
The other part of the lodestar formula is the reasonable hourly rate. Palmieri seeks an hourly rate of $300.00, which, he states, is his usual hourly rate for "regular clients."
Palmieri's claimed hourly rate for clients, however, is not the multiplier to be used in the lodestar. "The rates to be used in calculating the § 1988 lodestar are the market rates `prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation.'" Gierlinger v. Gleason, supra, 160 F.3d 882, quoting Blum v. Stenson, supra, 465 U.S. 896 n. 11; seeMissouri v. Jenkins, supra, 491 U.S. 295; Weyel v. Catania,52 Conn. App. 292, 302, 728 A.2d 512, cert. denied, 248 Conn. 922,733 A.2d 846 (1999). Here, the relevant community is the State of Connecticut. Smart SMR of New York, Inc. v. Zoning Commission, supra,9 F. Sup.2d 143.
Although Attorney Palmieri has not presented evidence of market rates, the defendants have. That evidence reflects that John R. Williams, the senior partner of the law firm in which Palmieri is an associate, has recently been awarded attorney's fees pursuant to § 1988 based on an hourly rate of $250. Lieberman v. Dudley, United States District Court, District of Connecticut, Civil No. 3:95CV2437 (AHN) (Ruling on Pending Motions, July 27, 1998). Attorney Williams is a very accomplished and experienced trial lawyer and civil rights litigator. He had practiced law in Connecticut for thirty years at the time of the decision inLieberman.[9] In Lieberman, Judge Nevas catalogued three other recent cases in which attorneys had been awarded attorney's fees based on an hourly rate of $250.00. In those cases the attorneys had all been practicing for at least twenty years and were partners in law firms; one was a teacher at the Yale University Law School; two had specialized experience in federal court.
In Calovine v. City of Bridgeport, United States District Court, District of Connecticut, Civil No. 3:94CV379 (WWE) (February 4, 1998), Judge Eginton awarded Attorney Burton Weinstein, who has practiced far longer than even Attorney Williams, attorney's fees pursuant to § CT Page 7193 1988, based on an hourly rate of $250.00. Judge Eginton observed the "Attorney Weinstein is among the most experienced plaintiffs' civil rights litigators in the state, having practiced in the federal courts for many years and having successfully litigated several significant civil rights cases." Indeed, Attorney Weinstein is probably the most accomplished and experienced civil rights lawyer in Connecticut. He labored in that area of the law when precedents under 42 U.S.C. § 1983
were relatively few and has established landmark precedents under that statute. See, e.g., Thurman v. City of Torrington, 595 F. Sup. 1521 (D. Conn. 1984). Attorney Weinstein has been nationally recognized in the areas of civil rights and constitutional law.
By contrast, Attorney Palmieri has been a member of the Connecticut Bar for less than six years. During almost all of that time, however, he has practiced with the law firm of Attorney John Williams, where, according to his affidavit, his primary areas of practice have been civil rights law and criminal defense. His affidavit also states that he has tried to verdict approximately sixty-five jury trials in federal and state court, of which forty-five have been civil rights claims brought under § 1983. Further, Attorney Palmieri states:
 To date, I have briefed and argued appeals, both as appellant and appellee, approximately twenty-five times in the Appellate Court, State of Connecticut, approximately ten times in the United States Court of Appeals for the Second Circuit, and three times in the Supreme Court, State of Connecticut. I have submitted written argument to the Supreme Court of the United States in the form of a brief in Opposition to a Petition for a Writ of Certiorari. In addition, I am awaiting the scheduling of argument on a number of matters pending in the Appellate Court of the State of Connecticut and the United States Court of Appeals for the Second Circuit.
A review of appellate case law reflects that Attorney Palmieri does have a significant amount of experience briefing and arguing appeals.[10]
In addition, Attorney Palmieri states that he graduated from Albertus Magnus College summa cum laude with a Bachelor of Arts degree in English, and that he graduated from the Vermont Law School in May, 1993. In law school, he the Notes Editor of the Vermont Law Review. He states that, subsequent to graduation from law school, legal research and writing completed by him as a student was published in a two volume treatise about Vermont's Act 250.
From the evidence before it and its own familiarity, the court finds CT Page 7194 that the market rate prevailing in the community for appellate litigation by lawyers of reasonably comparable skill, experience and reputation to that of Palmieri is $150.00.
"The determination of the amount of the award does not end with the lodestar calculation. Although there is a strong presumption that the lodestar figure represents the reasonable fee, City of Burlington v.Dague, [505 U.S. 557, 562], 112 S.Ct. 2638, 2641, 120 L.Ed.2d 449 (1992), other considerations may lead to an upward or downward departure from the lodestar." (Internal quotation marks omitted.) Grant v. Martinez, supra, 973 F.2d 101; see Hensley v. Eckerhart, supra, 461 U.S. 434. Attorney Palmieri enjoyed an optimal result on appeal — affirmance. The degree of success, at least at the trial level, has been considered the most important of the Hensley criteria. Orchano v. Advanced Recovery,Inc., supra, 107 F.3d 96-97. In addition, Attorney Palmieri's appellate brief was very good. On the other hand, while this case originally may have been less than "desirable" for some lawyers — the trial judge characterized it as a "close case" — after the jury's verdict, the case became very attractive from the standpoint of an appellate lawyer, even if the plaintiff had been without assets. The plaintiff had been awarded a large verdict. On appeal, the plaintiff stood as the appellee; the defendants were appellants. "It is well settled that the burden of establishing harm rests on the appellant." Williams Ford, Inc. v.Hartford Courant Co., 232 Conn. 559, 572, 657 A.2d 212 (1995).
Hensley v. Eckerhart, supra, 461 U.S. 430 n. 3, however, lists twelve factors which a court should consider in setting attorney's fees.[11]
This court has considered each of them. Less frequently discussed in case law but no less important than many other factors is the "reputation" of the attorney seeking attorneys fees. Id.
For a variety of reasons this is an area where trial judges, generally acting without the benefit of sworn "evidence" in the strict sense, must tread carefully. Per force of Hensley, however, tread we must.
"[R]eputation represents the community's belief as to the actual character or disposition" of a person. State v. Blake, 157 Conn. 99, 104,249 A.2d 232 (1968). A lawyer's most precious asset is his or her professional reputation. Superintendent v. Hill, 472 U.S. 445, 457,105 S.Ct. 2768, 86 L.Ed.2d 356 (1985) (Stevens, J., dissenting, with Brennanand Marshall, Js., concurring); Cooter Gell v. Hartmarx Corp.,496 U.S. 384, 413, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990) (Stevens, J.,concurring in part and dissenting in part). Competence and candor are chief among the many characteristics which courts and society at large require of lawyers. A lawyer's reputation for exaggeration, or worse, cuts to the heart of his professional reputation. A lawyer's CT Page 7195 "professional value" derives not merely from his skills as an advocate or technician, but from his reputation for honest and ethical practice. Nowhere is this more so than when the lawyer stands before the Bench.
Attorney Palmieri's claim that he expended hundreds of hours on the appeals in this case implicates his veracity and implicates Rules 1.5 and 3.3(a)(1) of the Rules of Professional Conduct. Rule 1.5 provides: "A lawyer's fee shall be reasonable." "Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission." Hensley v. Eckerhart, supra, 461 U.S. 434. Rule 3.3(a) (1) of the Rules of Professional Conduct provides: "A lawyer shall not knowingly . . . [m]ake a false statement of material fact . . . to a tribunal. . . ."
Especially egregious is that Attorney Palmieri has presented his credentials and claimed hours in an affidavit which contains serious inaccuracies. "[A]n assertion purporting to be on the lawyer's own knowledge, as in an affidavit by the lawyer or in a statement in open court, may properly be made only when the lawyer knows the assertion is true or believes it to be true on the basis of a reasonably diligent inquiry." Official Commentary to Rule 3.3 of the Rules of Professional Conduct. Here, Attorney Palmieri did not expend anywhere near the number of hours claimed, and he has not "argued and briefed" the number of appeals he claims to have handled.
In his affidavit in support of his motion for attorney's fees, dated December 20, 1999, Palmieri represents that he had "[t]o date . . . briefed and argued appeals, both as appellant and appellee, approximately twenty-five times in the Appellate Court, State of Connecticut. . . ." In response to an order that he list those cases, Attorney Palmieri could name only sixteen.[12] Sixteen cases is not "approximately twenty-five." Attorney Palmieri represents that he argued and briefed cases three times before the Connecticut Supreme Court. One of those three, State v. Ham, SC 16244, was not argued until almost four months after his affidavit was executed. In his affidavit, Palmieri represents that he has briefed and argued appeals approximately ten times in the United States Court of Appeals for the Second Circuit. In response to the court's order, he could list only seven Second Circuit cases.[13] These representations are material to the court's assessment of attorney's fees and Palmieri necessarily knew that they were inaccurate.[14]
The court also takes judicial notice of records of proceedings reflecting that on March 29, 2000, Attorney Palmieri was recently held in contempt by Judge Ronald Fracasse in State v. David Perry, Superior CT Page 7196 Court, judicial district of New Haven, CR 181428, for repeatedly violating an evidentiary ruling of the court during a jury trial.[15]
Although Attorney Palmieri apologized to the court and it does not appear that any sanction issued — and, therefore, that the finding of contempt was vacated — it is the transgression rather than any sanction or adjudication of contempt with which this court is concerned.
As troubling as these matters are, it is "reputation" generally to which Hensley and Rule 1.5(a)(7) speak. Reputation, like character, is generally not established by specific instances or inferences therefrom. Cf. Richmond v. Norwich, 96 Conn. 582, 597, 115 A. 11 (1921) (referring to "character"). In addition, it may be too early in Attorney Palmieri's professional career to draw a conclusion about his general reputation. As tempting as it was for another court to do so; see Amato v. City ofSaratoga Springs, supra, 991 F. Sup. 67; this court cannot deny the motion for attorney's fees nor will it decrease Attorney Palmieri's hourly rate based on this factor, although the possibility of other sanctions cannot be dismissed.
"No one can state the reasonable value of legal services as a fact. He can only express his opinion. The value is based upon many considerations." Hoenig v. Lubetkin, 137 Conn. 516, 524, 79 A.2d 278
(1951). Considering all of the Hensley factors and the court's own knowledge and experience, the court finds that Attorney Palmieri is entitled to an hourly rate of $150.00. Therefore, the plaintiff is entitled to attorney's fees from September 24, 1996, to the denial by the United States Supreme Court of the defendants' petition for a writ of certiorari in the amount of $17,550.00.
 II
The plaintiff has filed a motion seeking an award of postjudgment interest in the amount of ten percent per annum on the total amount of the judgment from the date of the entry of the judgment to the date of the satisfaction of the judgment. The defendants oppose the motion claiming (1) no interest may be awarded on the garnished proceeds after the date of the garnishment, and (2) interest should be limited to no more than 5.86%.
 A.
On April 11, 1997, as discussed supra, the plaintiff was adjudged guilty of murder and other offenses and was committed to the custody of the commissioner of correction to serve a total effective sentence of fifty years. On March 12, 1999, the State of Connecticut brought an action against the plaintiff seeking damages for the incurred and CT Page 7197 anticipated cost of his incarceration. On July 5, 1999, the trial court,Lavine, J. granted a garnishment to the State of Connecticut against the City of New Haven, as garnishee, in the amount of $893,910.50. The defendants claim that the court should not award interest on the garnished amount after the date of the garnishment. Although the plaintiff has neither briefed nor argued this issue, the court cannot agree with the defendants.
The garnishment ordered by the court was granted as a prejudgment remedy.[16] A "[p]rejudgment remedy" means any remedy or combination of remedies that enables a person by way of . . . garnishment . . . to deprive the defendant in a civil action of, or affect the use, possession or enjoyment by such defendant of, his property prior to final judgment but shall not include a temporary restraining order." A garnishment does not "`operate as a physical attachment of any property belonging to the defendant [creditor, here, the plaintiff] described in the writ, but as notice to the garnishee to retain in its hands any effects belonging to the defendant or any indebtedness due the defendant.' Hawthorne Sash Door Co. v. New London, 99 Conn. 672, 675, 122 A. 658 [1923]." CenturyIndemnity Co. v. Kofsky, 115 Conn. 193, 198, 161 A. 101 (1932). If the garnishor obtains a final judgment against the debtor, the former may obtain a postjudgment procedure with respect to the garnishment property.Vidal Realtors of Westport, Inc. v. Harry Bennett Associates, Inc.,1 Conn. App. 291, 295, 471 A.2d 658, cert. denied, 192 Conn. 804,472 A.2d 1284 (1984). If the garnishor fails to obtain judgment against the debtor, the garnishment ceases. Id. While the garnishment is in effect, interest on the property garnished continues to accrue and is bound by the garnishment. Savings Bank of Danbury v. Loewe, 242 U.S. 357,37 S.Ct. 172, 61 L.Ed. 360 (1917); 6 Am.Jur.2d, Attachment and Garnishment § 489 (1999). The plaintiff, therefore, is entitled to interest on the garnished proceeds until a judgment is rendered against him in the proceedings in which the garnishment was granted.
 B.
The defendants also contend that interest on the award should be limited to no more than 5.86 percent. The plaintiff argues that he should be awarded interest at the rate of 10 percent per annum. Based on the record presented, the court agrees with the defendants.
General Statutes § 37-3a provides in pertinent part: "Except as provided in sections 37-3b, 37-3c and 52-192a, interest at the rate of ten per cent a year, and no more, may be recovered and allowed in civil actions or arbitration proceedings under chapter 909, including actions to recover money loaned at a greater rate, as damages for the detention of money after it becomes payable."[17] The statute has been held to CT Page 7198 apply to the award of both prejudgment and postjudgment interest.Gionfriddo v. Avis Rent A Car System, Inc., 192 Conn. 301, 308,472 A.2d 316 (1984). "A decision to deny or grant postjudgment interest is primarily an equitable determination and a matter lying within the discretion of the trial court. . . . The court's determination regarding the award of interest should be made in view of the demands of justice rather than through the application of any arbitrary rule. . . . Whether interest may be awarded depends on whether the money involved is payable . . . and whether the detention of the money is or is not wrongful under the circumstances. . . ." (Internal quotation marks omitted.) Bower v.D'Onfro, 45 Conn. App. 543, 550-51, 696 A.2d 1285 (1997). "Wrongful" is commonly defined as "unjust." Merriam Webster's Collegiate Dictionary (10th Ed. 1991).
The defendants do not oppose an award of interest but claim that interest should not be awarded at the rate of 10 percent as the plaintiff claims. In Sears, Roebuck Co. v. Board of Tax Review, 241 Conn. 749,756-66, 699 A.2d 81 (1997), the court held that General Statutes §37-3a does not fix a uniform rate of interest in all cases but establishes a maximum rate. Accord Weyel v. Catania, Superior Court, judicial district of New Haven at New Haven, Docket No. 361996 (July 1, 1999, Silbert, J.); cf. Connecticut Post Ltd. Partnership v. Allen, Superior Court, judicial district of New Haven, Housing Session, Docket No. 9610-7875 (January 12, 1998, Levin, J.). The court judicially notices that during the time in question, market interest rates have been far below 10 percent. See New Haven Trust Co. v. Doherty, 74 Conn. 468, 472,51 A. 130 (1902). More importantly, the defendants have presented evidence in the form of an affidavit from the deputy controller of the City of New Haven that during the relevant period, the city earned interest on its short term investment fund between 5.05 percent and 5.86 percent. At the hearing before this court, the plaintiff was afforded an opportunity to impeach that evidence or present contrary evidence; he did not do so. In the absence of any evidence from the plaintiff as to what interest rate is appropriate, the court awards interest at the rate of 5.86 percent.
 III
A prevailing party may also be entitled to attorney's fees in connection with the fee hearing. The defendants have not contested the plaintiff's entitlement to attorney's fees pursuant to42 U.S.C. § 1988. They have argued, however, and successfully, that the amount of fees and interest claimed is excessive. While the plaintiff has prevailed on the issue of whether interest is owing subsequent to the garnishment of his recovery, the plaintiff did not address that issue. Moreover, the fee hearing was precipitated by Attorney Palmieri's CT Page 7199 preposterous claim of hours expended. To award attorney's fees for the fee hearing would not be equitable, and, therefore, none are awarded.
 IV
Finally, the plaintiff is "entitled to recover reasonable out-of-pocket expenses that were incurred during the litigation and that are normally charged to a fee-paying client. . . . Generally, recoverable expenses include those items not associated with an attorney's routine overhead, such as duplicating, postage and telephone costs." (Citations omitted.)Smart SMR of New York, Inc. v. Zoning Commission, supra, 9 F. Sup. 153-54. To the extent costs have not and will not be taxed by the clerk of this court or by the Connecticut Supreme Court, the plaintiff is awarded costs in the amount of $1,930.15.
To recap, the plaintiff is awarded attorney's fees of $17,550.00 plus costs of $1,930.15.
BY THE COURT
Bruce L. LevinJudge of the Superior Court